

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-28-2007

# Huang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3013

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Huang v. Atty Gen USA" (2007). 2007 Decisions. Paper 361.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/361

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3013

HAI FAN HUANG,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,
                                        Respondents

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A73-476-699
(U.S. Immigration Judge: Honorable William Strasser)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 10, 2007
Before:  SCIRICA, *Chief Judge*, RENDELL and FUENTES, *Circuit Judges*.

(Filed September 28, 2007)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

       Hai Huang petitions for review of the Board of Immigration Appeals' May 19,

2006, order denying as untimely his motion to reopen his immigration proceedings.  We

will deny the petition and affirm the BIA's order.

Huang, a native and citizen of China, entered the United States without valid travel documentation on December 22, 1994. On December 27, 1994, he was placed in exclusion proceedings by the former Immigration and Naturalization Service (INS), which filed a Notice to Applicant for Admission with the Immigration Court: the INS charged Huang with inadmissibility for his lack of a valid entry or travel documentation. Huang filed an application for political asylum on January 12, 1995. At a hearing before an Immigration Judge on February 6, 1996, Huang conceded his inadmissibility, but renewed his request for asylum, and also sought withholding of removal and relief under the Convention Against Torture. He testified he feared future persecution in China because (1) he wanted to have more than one child but would be prevented from doing so by China's coercive population control policies, and (2) he was a practicing Christian.

At the conclusion of the hearing, the IJ denied Huang's requests for relief and ordered his exclusion and removal from the United States. The IJ found Huang had failed to establish a well-founded fear of future persecution, because (1) he was unmarried and childless and (2) it was unclear what consequences he would face for practicing Christianity in China, particularly as he conceded his churchgoing Christian siblings had not been harmed since his departure. Huang appealed the IJ's decision to the BIA, which agreed he had failed to establish a well-founded fear of persecution and dismissed the appeal on February 28, 1998, affirming the order of exclusion and removal. But Huang never left the United States. On December 10, 1999, he married Jianyan Zheng, and the

2

couple now has two children born in the United States: a son born in 2000 and a daughter born in 2004.

On March 3, 2006, Huang filed a "Motion to File Successive Asylum Application Pursuant to 8 C.F.R. § 208.4" with the BIA, citing the birth of his two children as changed personal circumstances entitling him to asylum. Because of these changed circumstances, he contended, he was allowed to file a successive asylum application beyond the normal application deadline of one year from an alien's arrival in the United States, established by section 208(a)(2)(B) of the Immigration and Nationality Act ("INA"). Section 208(a)(2)(D) of the INA states:

> An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

8 U.S.C. § 1158(a)(2)(D). Regulations implementing INA § 208(a)(2)(D), in turn, define "changed circumstances" to include "[c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 208.4(a)(4)(B) (2007).

More importantly, Huang contended, the fact that his changed personal circumstances put him within the purview of INA § 208(a)(2)(D) and 8 C.F.R. § 208.4(a)(4)(B) also meant that he was *not* required to file a motion to reopen his

3

immigration proceedings. INA § 240 generally requires that such motions to reopen be filed with the BIA "within 90 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(7)(C)(i), but waives the deadline for motions to reopen that rely on evidence of "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(ii) (2007) (establishing substantially identical standard). This deadline waiver for purposes of a motion to reopen obviously applies to a narrower range of situations (specifically, changed country conditions) than that covered by 8 C.F.R. § 208.4(a)(4)(B)'s definition of "changed circumstances" for purposes of successive asylum petitions.

The BIA rejected Huang's argument. It found INA § 208(a)(2)(D)'s waiver of the one-year asylum application deadline in cases involving "changed circumstances which materially affect the applicant's eligibility for asylum" did not apply to successive applications by aliens already under a final administrative order of exclusion or removal. Rather, the BIA found aliens already under a final administrative order of exclusion or removal are bound by INA § 240's filing deadline for motions to reopen. Finding Huang's filing to be a motion to reopen, it held that the birth of children in the United States did not constitute changed conditions sufficient to waive INA § 240's ninety-day filing deadline, and denied his motion as untimely. Huang timely appeals.

II.

4

The BIA had jurisdiction over Huang's motion to reopen under 8 C.F.R. § 1003.2(c). We have jurisdiction over his timely petition for review under 8 U.S.C. § 1252.

BIA fact-finding is reviewed for substantial evidence. 8 U.S.C. § 1252(b)(4)(B). "This Court reviews the BIA's legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)." *Briseno-Flores v. Attorney Gen.*, 492 F.3d 226, 228 (3d Cir. 2007). *Chevron* established a two-step process for judicial review of an administrative agency's interpretation of statutes: if the unambiguous intent of Congress is clear from the text of the statute, then the court and the agency must give it effect; but if the statute is silent or ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. In the latter situation, where Congress has explicitly or implicitly left a gap in the statute for the agency to fill, the agency's "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. Ultimately, a court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* We have held "that the BIA should be accorded *Chevron* deference for its interpretations of the immigration laws." *Chen v. Ashcroft*, 381 F.3d 221, 224 (3d Cir. 2004). Moreover, "[i]t is well settled that a court must afford substantial deference to an agency's interpretation of its own

5

regulations." *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

Motions to reopen are granted "only under compelling circumstances." *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). The Supreme Court has noted the Attorney General has broad discretion to grant or deny motions to reopen, and they are "disfavored . . . . This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Accordingly, we review the denial of a motion to reopen for abuse of discretion, and will only disturb the BIA's decision if it is arbitrary, irrational, or contrary to the law. *Guo*, 386 F.3d at 562.

III.

A.

Huang contends the statutory and regulatory provisions for successive asylum petitions are wholly separate from, and independent of, those for motions to reopen. As an alien whose personal circumstances have allegedly changed such that he now has a well-founded fear of future persecution should he be removed to China, he contends he is entitled to file a successive petition for asylum now, more than eight years after the BIA affirmed his order of exclusion and removal. The government contends aliens who are under a final administrative order of exclusion or removal (as Huang is) must file a motion to reopen their immigration proceedings as a pre-requisite to filing a successive asylum petition. We find the government's conclusion is neither arbitrary nor capricious.

6

Huang's argument chiefly relies on the history of 8 C.F.R. § 208.4, which defines "changed circumstances" for purposes of INA § 208(a)(2)(D). In its proposed form, the regulation stated "changed circumstances" referred to "circumstances materially affecting the applicant's eligibility for asylum that have arisen . . . since the denial of the last asylum application by the alien." Asylum Procedures, 62 Fed. Reg. 444, 463 (proposed Jan. 3, 1997) (to be codified at 8 C.F.R. § 208.4(a)(2)). The proposed rule specified that "[c]hanged circumstances arising after the denial of the application but before the alien's departure or removal from the United States shall only be considered as part of a motion to reopen . . . ." *Id.* By its plain language, this last provision would seem to have applied to Huang: aliens whose applications for asylum had been denied and who were under a final administrative order of exclusion or removal would have been required to file a motion to reopen when changed circumstances had arisen that materially affected their eligibility for asylum.

But in the final version of the regulation, the language about motions to reopen was omitted from the definition of "changed circumstances." *Compare id. with* 8 C.F.R. § 208.4(a)(4) (1998). Explaining the change, the INS stated:

> Because of inconsistency between the formulation of changed circumstances in [INA] section 208(a)(2)(D) and the formulation in [INA] section 240(c)(5)(ii) . . . , which permits an alien to file a motion to reopen beyond the time limit normally applicable to such a motion, the Department has decided to drop the requirement that, for purposes of the prohibition in [INA] section 208(a)(2)(C), such exception may only be raised through a motion to reopen.

7

Asylum Procedures, 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 2007). Huang contends "[t]his language could not be more clear on its face: an alien seeking to [file] a successive and untimely asylum application based upon materially changed personal circumstances need not reopen his prior asylum application pursuant to 8 C.F.R. § 1003.2 to apply for this relief." Huang Br. 13.

In denying his motion, the BIA stated Huang was still required to file a motion to reopen: notwithstanding 8 C.F.R. § 208.4, "[t]he reopening restrictions [of INA § 240 and 8 C.F.R. § 1003.2] are additional limitations on the ability of aliens to use either asylum or withholding claims as a means of reopening final[] orders of exclusion, deportation, or removal." *In re Hai Huang*, No. A73-476-699, at 2 (BIA May 19, 2006). INA § 208 and 8 C.F.R. § 208.4's provisions on successive asylum applications, it added, "are separate from, and apply principally at an earlier stage of the proceedings than, the 90-day reopening provisions . . . ." *Id.* Elaborating, the BIA stated:

> An alien who has completed his or her proceedings before an [IJ], and possibly the [BIA], and has not departed once reopening time has expired, is not in the same position as one who has only missed the 1-year deadline or whose earlier claim was denied in an order that has not ripened into a final order of removal.

*Id.* The BIA quoted *Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006), in which the Court of Appeals for the Second Circuit affirmed the BIA's denial of a motion to reopen that relied on the birth of children in the United States, and in the process distinguished between asylum applications and motions to reopen:

8

When considering the initial application of an asylum-seeker who has had more than one child at the time of his initial application and may, therefore, be subject to forcible sterilization in his country of citizenship, the BIA has the discretionary authority either to grant the petition based upon the evidence presented or to find that the petitioner has failed to establish a well-founded fear of future persecution. It is quite a different situation, however, where a petitioner is seeking to reopen his asylum case due to circumstances entirely of his own making after being ordered to leave the United States. In such a situation, it would be ironic, indeed, if petitioners . . . who have remained in the United States illegally following an order of deportation . . . were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities. This apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme. The law is clear that a petitioner must show changed country conditions in order to exceed the 90-day filing requirement for seeking to reopen removal proceedings. A self-induced change in personal circumstances cannot suffice.

*Wang*, 437 F.3d at 274 (citations omitted).

We find the logic of *Wang* equally applicable to successive asylum applications such as Huang's: an alien who has ignored his final administrative order of removal for more than eight years cannot then short-circuit INA § 240 and 8 C.F.R. § 1003.2's procedural requirements for motions to reopen by couching his request for relief as a successive asylum petition on the basis of changed personal circumstances under INA § 208 and 8 C.F.R. § 204.8. Absent a showing of changed circumstances in China, Huang is bound by the ninety-day deadline for filing a motion to reopen.

As the government notes, Congress "has not directly spoken to the specific issue of whether an alien with a final administrative order is required to file a motion to reopen his proceedings in conjunction with an untimely or successive asylum application." Gov't

9

Br. 10. Congress has expressly delegated to the Attorney General the duty to establish procedures for considering asylum applications, and we cannot say the BIA's requirement that an alien under a final administrative order of exclusion or removal must file a motion to reopen is an arbitrary or capricious interpretation of the immigration laws. This interpretation was set forth in a recent decision from the Court of Appeals for the Seventh Circuit. *See Chen v. Gonzales*, ___ F.3d ___, 2007 WL 2389766, at *1 (7th Cir. Aug. 23, 2007) (holding, where alien under final removal order sought leave to file successive asylum application on basis of two American-born children, that procedural requirements for motions to reopen "govern[], and so the petition for review must be denied"). *But see Haddad v. Gonzales*, 437 F.3d 515, 518–19 (6th Cir. 2006) (stating, where denial of alien's motion to reopen as untimely was affirmed but alien had never filed her own application for asylum because she was listed as a dependent on her then-husband's application, that changed personal circumstance of divorce might allow alien to file asylum application under INA § 208(a)(2)(D)); *Guan v. BIA*, 345 F.3d 47, 49 (2d Cir. 2003) (per curiam) (stating in dicta that alien, the denial of whose motion to reopen as untimely was affirmed, might still be able to file a successive asylum application under INA § 208(a)(2)(D) on the basis of changed personal circumstances).

The BIA's interpretation here is consistent with related regulations. *See, e.g.*, 8 C.F.R. § 1208.4(b)(3)(ii) (2007) (requiring that an alien who files his first asylum application only after the conclusion of exclusion or removal proceedings must do so "in conjunction with a motion to reopen pursuant to 8 CFR part 1003 where applicable [that]

10

reasonably explain[s] the failure to request asylum prior to the completion of the proceedings").

Further, accepting Huang's argument that he may file a successive asylum application here could, as the government contends, render superfluous INA § 240 and 8 C.F.R. § 1003.2's requirement that motions to reopen be filed within ninety days absent changed country conditions: as noted, the definition of "changed circumstances" for purposes of successive asylum applications is more expansive than that for purposes of motion to reopen; and aliens for whom the avenue of a motion to reopen is properly foreclosed could nonetheless style their requests for relief as successive asylum applications to be considered under the more permissive standard. *See Chen v. Gonzales*, ___ F.3d at ___, 2007 WL 2389766, at *1 ("The distinction that [INA § 240] . . . makes between changed country conditions and changed personal conditions is sensible, since the alien can manipulate the latter but not the former.").

Finally, the regulatory history of 8 C.F.R. § 208.4(a)(4)(B) is not unambiguous. The INS did not state that the procedural requirements for motions to reopen were being displaced by those for successive asylum applications in cases involving changed personal circumstances. Rather, it explained that the language about motions to reopen was dropped from the final version of 8 C.F.R. § 208.4(a)(4) because the definition of "changed circumstances" in reopening differs from that in successive asylum applications. *See* 62 Fed. Reg. at 10,316; *see also Chen v. Gonzales*, ___ F.3d at ___,

11

2007 WL 2389766, at *1 (stating "[t]here is no conflict" between the separate regimes for motions to reopen and successive asylum applications as currently written).

B.

Having determined the BIA properly construed Huang's March 3, 2006, filing as a motion to reopen his immigration proceedings, we next consider whether the BIA abused its discretion in denying the motion as untimely. We conclude it did not.

Huang's motion was filed more than eight years after the BIA affirmed his order of exclusion and removal. The BIA found the birth of two children in the United States did not constitute "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered" as required by INA § 240(c)(7)(C)(ii) and 8 C.F.R. § 1003.2(c)(ii) to waive the ninety-day deadline for motions to reopen. We agree that Huang's changed personal circumstances are distinct from changed circumstances arising in China. Thus we agree with the Courts of Appeals for the Second and Seventh Circuits, which have held that changed personal circumstances do not fall under this exception. *See Wang*, 437 F.3d at 274; *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005) (per curiam). Furthermore, Huang has failed to demonstrate changed circumstances in China to justify reopening his asylum proceedings. Although Huang provides some evidence showing China's enforcement of its coercive population control policies,[1] he fails to show any changed circumstances regarding these policies.

_____

[1] The principal evidence supporting Huang's motion (aside from his children's birth) is
(continued...)

12

IV.

We will deny the petition and affirm the BIA's order.

---

[1](...continued)
an affidavit, dated 2003, from a specialist on Chinese demographic developments and population policy, John Aird. But the "oft-cited Aird affidavit," *Wang*, 437 F.3d at 275, has been significantly undermined. The BIA in *In re C– C–*, 23 I. & N. Dec. 899 (2006), convincingly argued against further reliance on the Aird affidavit where petitioners for asylum contend they will be subject to persecution in the form of forced abortion or sterilization in China for having foreign-born children. Aird (who retired from the Census Bureau more than twenty years ago and died in October 2005) based his affidavit not on personal knowledge, but on documents mainly from the 1980s and 1990s that are in conflict with a more recent 2005 State Department report on conditions in China. *Id.* at 901–02. Further, the Aird affidavit "only briefly discusses" a 2004 State Department report "as it relates to citizens returning to China with foreign-born children." *Id.* at 901; *see also Wang*, 437 F.3d at 275, 274 (noting the Aird affidavit had been submitted in more than 200 cases since 1993, and rejecting reliance on it where the affidavit "was not prepared specifically for petitioner and is not particularized as to his circumstances").

13