*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0364p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

YAN XIA ZHANG,

*Petitioner,*

*v.*

No. 07-3355

MICHAEL B. MUKASEY,

*Respondent.*

On Appeal from the Board
of Immigration Appeals.
No. A78 469 270.

Submitted: September 9, 2008

Decided and Filed: October 8, 2008

Before: BOGGS, Chief Judge; and GIBBONS and GRIFFIN, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** Gary J. Yerman, YERMAN & ASSOCIATES, New York, New York, for Petitioner. Nehal H. Kamani, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

### OPINION

---

BOGGS, Chief Judge. Yan Xia Zhang ("Zhang"), a Chinese citizen, petitions for review of the decision of the Board of Immigration Appeals ("BIA" or "Board") denying both her motion to reopen asylum proceedings and her successive application for asylum. Zhang argues that the BIA abused its discretion by failing to consider fully evidence that she says demonstrates changed country conditions in China that would support the reopening of her asylum proceedings. The BIA, however, need only rationally explain the basis for its decision as to country conditions. Zhang argues, in the alternative, that the BIA misconstrued the statutory provision governing the reopening of immigration proceedings to also govern a new, untimely application and that she should be able to proceed on her new application on grounds beyond changed country conditions. Because the BIA's interpretation of the ambiguous provisions was reasonable, we defer to it. Accordingly, we deny Zhang's petition for review.

1

I

Zhang entered the United States from her native China on April 7, 2000. She was detained upon arrival and requested asylum. At the subsequent hearing before an Immigration Judge (IJ), Zhang alleged that she was subject to persecution under China's population policy. She claimed that, after she became pregnant out of wedlock, local population officials compelled her to undergo an abortion and demanded that she present herself the next month for the insertion of an intrauterine device that would prevent any future pregnancy. Instead of submitting to the forced contraception procedure, Zhang says she fled her hometown, hiding out with relatives until she could secure passage to the United States.

The IJ made an adverse credibility determination and denied her application for asylum and withholding of removal. The IJ, after considering Zhang's documentary evidence and its factual foundation, concluded that "[t]he respondent . . . has presented what this Court deems to be fraudulent documents in an effort to obtain a benefit under the Act." Among other inconsistencies, the IJ noted that the written document meant to confirm the forced abortion episode was signed by her father and brother even though the official Chinese household identity card Zhang provided to the court indicated both men had been living in the United States for years prior to the incident. The "most damning" factor for the IJ was the evolution of Zhang's story from her initial statements to immigration officials to the story she pressed in the hearing. She originally suggested that she came to the United States because it is "a democratic country and human rights are very important" and gave no mention of coercive family planning policies. Only later did her claim center on the abortion incident. Zhang explained that she was frightened at first and her final story was the truth. The IJ, however, concluded that, in light of her paying to be shepherded through immigration by a co-passenger, "her fear was not so great as she would have this Court believe." The IJ further found "that the respondent's application for asylum is a frivolous application."[1] Zhang appealed to the Board of Immigration Appeals but failed to file a brief. The Board summarily affirmed in a per curiam decision and made the order of removal against Zhang final.

Zhang nevertheless remained in the United States. By her account, she proceeded to lead a normal life, securing employment and integrating into the immigrant community. She says she met and fell in love with another Chinese immigrant, Jia Xun Wang. She has given birth to two children, a daughter in 2003 and a son the next year. She now, nearly seven years after the BIA issued it, challenges the order of removal.

In February 2007, Zhang filed with the BIA a "Motion to Reopen and Successive Asylum Application." She alleged that the passage and enforcement of a new Chinese law, the Population and Family Planning Law, effective September 2002, constituted changed country conditions in China that warranted a reopening of her application under 8 U.S.C. § 1229a(c)(7)(C)(ii). She further alleged that her own changed circumstances – the birth of her two children – supported a new application for asylum under 8 U.S.C. § 1158(a)(2)(D) because she was now in violation of China's one-child policy and persecution was certain if she were forced to return. The BIA treated these as separate avenues of relief and denied each in turn.

The Board relied on the IJ's adverse credibility determination in rejecting Zhang's claim of changed country conditions. The linchpin of Zhang's argument that she faced an individualized risk of persecution was a letter from her friend alleging two incidents in their home province of Fujian where violations of the population policy resulted in forced sterilization. The Board, however, concluded it "cannot simply accept at face value the purported letter from the applicant's friend as

---

[1] Ordinarily, this finding would make Zhang "permanently ineligible" for asylum relief. 8 U.S.C. § 1158(d)(6). In this case, however, as the BIA pointed out below, petitioner was not informed of the consequences of filing a frivolous application at the time of application and therefore is not precluded from advancing her current claims.

reliable evidence that the applicant now faces sterilization" in light of the IJ's findings that Zhang "submitted fraudulent documents, that her testimony was not credible, and that her asylum application was frivolous."

The Board then turned to her successive application. The application was based on language in § 1158(a)(2)(D): "An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . . ." Subparagraphs (B) and (C) provide, respectively, that an alien must file her application within one year after arriving in the United States and that an alien may not file another application if her first is rejected. The Board disagreed with Zhang's interpretation that the exception applied and would allow her to file an additional application notwithstanding her failed motion to reopen her earlier proceedings. Instead, the Board read the statute to mean the statutory bars in § 1158(a)(2)(D) are "separate from, and apply principally at an earlier stage of proceedings than, the 90-day" limitations period in the provisions regulating motions to reopen petitions. It explained that the reopening restrictions now applied to Zhang and foreclosed her application because "[a]n alien who has completed her proceedings before an Immigration Judge, and possibly the Board, and has not departed once the 90-day period for reopening has expired, is not in the same position as an alien who has only missed the 1-year deadline or whose earlier claim was denied in an order that has not ripened into a final order of removal." The Board held that § 1158(a)(2)(D) did not contemplate "untimely claims by aliens *under final orders* based on changes arising outside the country of nationality or of removal" and, therefore, Zhang must carry her burden to reopen proceedings before the Board would consider a successive asylum application

Zhang now petitions for review of the Board's decision. We address each issue in turn.[2]

## II

"We review the BIA's denial of a motion to reopen for an abuse of discretion." *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006); *see* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen . . . is within the discretion of the Board."). We will find an abuse of discretion where "denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

Zhang argues that the BIA abused its discretion by failing to discuss the numerous documents that she appended to her motion to reopen. Specifically, the opinion did not discuss the State Department country reports or the testimony of China experts about abuses related to the new family planning law. Because these documents are material to an element of her claim, she argues that their omission from the Board's discussion requires that we vacate the decision and remand for a fuller explanation of the decision. She correctly describes the Board's reasoning but incorrectly characterizes the law regarding such a decision.

We do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion. Instead, we understand that there are "at least three independent grounds on which the BIA might deny a motion to reopen – failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the

---

[2]Zhang also petitions for review of the denial of withholding of removal and relief under the Convention Against Torture. Pet. Br. 23-24. Because these claims require a higher showing by Zhang, our analysis also supports the Board's denial of relief on these claims. *See, e.g.*, *Liti v. Gonzales*, 411 F.3d 631, 641-42 (6th Cir. 2005).

discretionary grant of relief which he sought." *INS v. Doherty*, 502 U.S. 314, 323 (1992) (internal citations omitted). Consequently, the Board need only analyze and explain the basis on which it decided against Zhang. It did so. The Board rejected the credibility of her evidence and held that she did not establish that she "now faces sterilization if she returns to China." When a necessary element of her claim – whether she faced a risk of individual persecution – failed, so did her entire motion. *See Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) ("[A]n alien filing a motion to reopen based on changed country conditions cannot rely on speculative conclusions or mere assertions of fear of possible persecution but instead must offer reasonably specific information showing a real threat of individual persecution.") (internal quotations and citations omitted). The Board owed no duty to rehearse the rest of her evidence for sake of completeness.

Zhang argues that precedent from a sister circuit suggests remand is appropriate where the BIA fails to consider salient evidence of change in country conditions. *See Poradisova v. Gonzales*, 420 F.3d 70, 81 (2d Cir. 2005) ("IJs and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim . . . [and a] similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions."); *see also Shou Yung Guo v. Gonzales*, 463 F.3d 109, 115 (2d Cir. 2006) (remanding to the BIA to consider change of country condition evidence). Those cases are different from Zhang's. There, the success of the motion depended on whether the BIA should consider the documents at all. *See Poradisova*, 420 F.3d at 82 (remanding because extensive documents deserve more than a "perfunctory" treatment in denying country conditions had changed); *Guo*, 463 F.3d at 114-15 (remanding where BIA did not consider "self-evidently material" documents because they were "new"). The BIA's analysis of Zhang's general documents, on the other hand, was not necessary to its decision: she did not show that the changed conditions would result in a risk of persecution *against her*. *Harchenko*, 379 F.3d at 410. Moreover, "[m]otions to reopen are disfavored in deportation proceedings [because] [t]here is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their . . . cases." *INS v. Abudu*, 485 U.S. 94, 107 (1988). To remand here because the Board did not needlessly discuss documents on points of fact not material to its decision would frustrate this policy of finality in immigration proceedings without any benefit.

Zhang also made no attempt – either before the Board or this court – to rehabilitate her credibility. The IJ concluded Zhang's original application was frivolous, finding her not credible and her documents fraudulent. Against that background, and with petitioner giving no reason to doubt the IJ's conclusions,[3] we cannot say the Board abused its discretion in declining to credit a letter from Zhang's best friend without corroboration. As the letter was the only evidence of an individualized risk of persecution, the Board's conclusion that she did not carry her "heavy burden" of demonstrating a prima facie case for relief is rationally explained and within its established policy.

III

Having determined that the BIA did not abuse its discretion in denying Zhang's motion to reopen, we next consider whether the BIA correctly decided that it was barred from considering her successive asylum application independent of the motion to reopen. The Board held that, after a removal order is final for 90 days, § 1229a(c)(7)(C)(ii) provides an alien with the exclusive avenue of relief from that removal order and that, therefore, additional applications for asylum are only

---

[3] The documents offered by Zhang in support of her motion to reopen also cast doubt on her credibility. For instance, her motion alleges that Zhang "and her boyfriend, Mr. Jia Xun Wang . . . quickly fell in love. The couple has had two children together . . . ." Yet only one of the birth certificates of her children lists Jia Xun Wang as the father. *Compare* J.A. 54 (listing the father as "Jiang Xiong Wang" with a birth date of "03/18/1974") *with* J.A. 55 (listing the father as "Jia Xun Wang" with a birth date of "10-13-1972").

permissible if they are accompanied by a motion to reopen supported by changed country circumstances. This is a novel question of statutory interpretation for this circuit, and the court reviews the BIA's interpretation de novo. *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). When statutory language is susceptible to more than one reading, the court "must defer to the BIA's reasonable interpretation of the INA." *Ibid.* (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999)). Because we view the BIA's reading of the statute as both permissible and reasonable, we defer and deny Zhang's petition for review. This view is consistent with all five of the courts of appeals that have considered this question. *See Jin v. Mukasey*, 538 F.3d 143 (2d Cir. 2008); *Qing Li Chen v. Mukasey*, 524 F.3d 1028 (9th Cir. 2008); *Zheng v. Mukasey*, 509 F.3d 869 (8th Cir. 2007); *Huang v. Attorney Gen. of U.S.*, 249 F. App'x 293 (3d Cir. 2007) (unpublished opinion); *Cheng Chen v. Gonzales*, 498 F.3d 758 (7th Cir. 2007).

Our consideration of the Board's interpretation begins with the text. At issue is the interaction of two sections of Title 8, each placing limits on an alien's ability to file and refile asylum applications and each also granting an exception to those limits. First, §§ 1158(a)(2)(B) and (C) provide limitations for asylum applicants: an alien must file for asylum within a year of entering the country and may not reapply if she is denied. Section 1158(a)(2)(D), however, provides an exception:

> An application for asylum of an alien may be considered notwithstanding subparagraphs (B) and (C), if the alien demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay . . . .

Second, § 1229a, the statutory provision governing removal, provides that once an order for removal becomes final an applicant may file for the reopening of the proceedings only within the first 90 days unless she can demonstrate "changed country conditions arising in the country of nationality or in the country to which removal has been ordered." § 1229a(c)(7)(C)(ii).

These provisions manifestly provide competing standards for determining an alien's eligibility to file an additional asylum application. Under § 1158(a)(2)(D), an alien can overcome the provision's limitations and proceed with a new asylum application if she can demonstrate *any* changed circumstances that materially affect her eligibility. Under § 1229a(c)(7)(C)(ii), however, an alien who has been subject to a final order of removal for 90 or more days can overcome that provision's limitations and proceed on her motion to reopen only if she can demonstrate changed *country* conditions in her country of nationality. Neither section (nor the implementing regulations) explains how they relate, leaving open the question we face today: under what circumstances may an alien subject to a final order of removal for more than the 90-day period file a new application for asylum. The language admits of two possible readings. Section 1158 could be read independently of the rules for a motion to reopen under § 1229a, allowing an unlimited period to reapply for asylum provided an alien can show *any* changed circumstances material to her application; or § 1158 could be read in conjunction with § 1229a, so that 90 days after an alien becomes subject to final order of removal, an additional asylum application must be coupled with a motion to reopen supported by changed *country* conditions.

Our circuit in *Haddad* suggested that the first reading was correct and a successive application need not be coupled with a motion to reopen. 437 F.3d at 518. Even though the court held that the petitioner's allegations of changed personal circumstances were insufficient to support a motion to reopen under § 1229a(c)(7)(C)(ii), it indicated that she nonetheless "may file a new asylum application . . . 'if the alien [satisfactorily] demonstrates . . . changed circumstances which materially affect the applicant's eligibility.'" *Ibid.* (quoting § 1158(a)(2)(D)). The court allowed that "[i]t may seem odd that an asylum application that would not be considered when attached to a

motion to reopen very well might be considered when simply filed anew under 8 U.S.C. § 1158" but it concluded that "this result is required by the statute and regulations." *Ibid.*

Zhang's case is not controlled by *Haddad*. The holding in *Haddad* was limited to whether Haddad's changed personal circumstances – a divorce – supported a motion to reopen under § 1229a(c)(7)(C)(ii). *See* 437 F.3d at 516 ("Haddad argues that the BIA erred because her divorce constitutes a 'changed circumstance' that makes the usual deadline inapplicable to her. This exception requires changed *country* (not personal) circumstances, however, so Haddad was subject to the deadline."); *see also Jin*, 538 F.3d at 156 (characterizing *Haddad*'s discussion of § 1158(a)(2)(D) as dicta); *Cheng Chen*, 498 F.3d at 760 (same). The *Haddad court* also did not engage in a sustained discussion of the interrelation of the sections nor did it consider the BIA's approach. *See* 437 F.3d at 518-19; *see also Cheng Chen*, 498 F.3d at 760 (noting *Haddad* "did not mention section 1229a(c)(7)(C) or the Board's understanding of its relation to section 1158(a)(2)(D)" and declining to follow its approach).

For similar reasons two of the circuits that agree with the BIA's view expressly rejected earlier dicta from their circuits suggesting that the successive application remedy was available independent of a motion to reopen. *See Jin*, 538 F.3d at 156 (rejecting the claim it must follow the view expressed in *Guan v. BIA*, 345 F.3d 47 (2d Cir. 2003) (per curiam) that a new application need not accompany a motion to reopen "because that comment was contained in dicta"); *Li Chen*, 524 F.3d at 1033 ("Because the interplay between the two statutory provisions was not 'presented for review' in *He* [*v. Gonzales*, 501 F.3d 1128 (9th Cir. 2007)], we are not bound by *He*'s offhand observation.").

Finally, even if we were convinced that the *Haddad* court meant to rule squarely on this question, we would still be required to defer to the BIA's contrary interpretation because *Haddad* did not find the language unambiguous. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

There are two other arguments that suggest the BIA view is in fact inconsistent with the statute. Neither is persuasive. First, the fact the two provisions deal with different situations – a new application and the *re*opening of an existing one – lends substance to the claim that Congress intended there to be different substantive standards for § 1158(a)(2)(D) and § 1229a(c)(7)(C)(ii), and the importation of the latter's 90-day limitations period is therefore contrary to the statute. But an acknowledgment that different standards should be required in these admittedly different contexts does not compel us to reject the BIA's approach. On the BIA's view, § 1158(a)(2)(D)'s laxer standard still plays a role during the 90-day period where a motion to reopen need only demonstrate new facts that would be proven if the motion were granted. *See* 8 U.S.C. § 1229a(c)(7)(B). Importantly, the 90-day deadline is not an arbitrary cut-off. It represents a measured decision about the grace period allowed to an alien subject to a final order of removal that is reflected throughout the statute. For instance, an alien subject to a final order of removal who remains for more than 90 days is subject to criminal penalties. 8 U.S.C. § 1253(a)(1)(A). It makes sense to require a heightened showing after those 90 days. In fact, it is the opposite reading that renders statutory language superfluous. If an alien could "completely bypass the more stringent procedural requirements for a motion to reopen by filing a successive aslyum application . . . neither 1229a(c)(7)(C)'s ninety-day deadline nor its exception . . . would ever apply, even after the entry of a final order of removal." *Jin*, 538 F.3d at 153. And so the BIA's interpretation comports with the text and structure of the statute.

Second, changes made to proposed regulations implementing § 1158(a)(2)(D) are said to support an inference against the BIA's view. The proposed regulation stated that "[c]hanged circumstance arising after the denial of the application but before the alien's departure or removal from the United States shall only be considered as a motion to reopen." 62 Fed. Reg. 444, 463 (proposed Jan. 3, 1997). The adopted version, however, did not contain this language because "of inconsistency between the formulation of changed circumstances" in §§ 1158(a)(2)(D) and 1229a(c)(7)(C)(ii). 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997) (Published Comment by the Justice Department Executive Office for Immigration Review). The BIA in *Matter of C-W-L-*, 24 I&N Dec. 346 (BIA 2007), persuasively explains why it is not correct (or, at least, not unambiguously so) to conclude from this change that a new application was intended to always be considered independently of a motion to reopen. The cited proposal was "silent on the issue of reopening, most likely because the requirement of an accompanying motion to reopen once a final order of removal has been entered is clearly set forth in other parts of the statutory and regulatory scheme." *Id.* at 352. Indeed, the regulations elsewhere provide that only those asylum applications filed "[i]n conjunction with a motion to remand or reopen pursuant to §§ 1003.2 and 1003.8 of this chapter" may be considered by the BIA. 8 C.F.R. § 1208.4(b)(4). As the Eighth Circuit argues, putting this change in regulatory language in its proper context certainly supports an inference that new applications under § 1158(a)(2)(D) are permissible during the 90-day period (an interpretation the BIA agrees with) but does "not reflect a clear intent to *weaken* the requirements of a motion to reopen when an alien under a final order of removal seeks to file an untimely or successive asylum application." *Zheng*, 509 F.3d at 872 (emphasis in original). This regulatory history does not unambiguously foreclose the BIA's interpretation.

We also note that the BIA's interpretation squarely comports with the acknowledged policies underlying our asylum law. Because of the interest in finality in immigration proceedings, the Supreme Court has emphasized that "[m]otions for reopening of immigrations proceedings are disfavored." *Doherty*, 502 U.S. at 323. An approach that allows new applications to be filed independent of the stringent standards of § 1229a(c)(7)(C)(ii) eliminates any limitations period for reapplying for asylum: § 1158(a)(2)(D) allows for application "notwithstanding" the section's numerical and time limitations. Such an approach undermines the interest of finality and risks "endless delay" in removal of aliens not legally permitted in the country. *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981). The BIA's approach reasonably permits an alien to apply for asylum successively, based on any material changed conditions for 90 days after a final order of removal, but not thereafter. Once our laws make it illegal for the alien to remain in the country, it applies the more narrow country conditions requirement for reopening a claim.

The potential for manipulation of "changed circumstances" similarly underscores the reasonableness of applying a more exacting standard to applicants who have overstayed a final removal order. The "*any* changed circumstances" standard of § 1158(a)(2)(D) includes circumstances within the control of the alien. Extending that standard past 90 days after a removal order becomes final permits an alien to manufacture a more perfect asylum application while living illegally in the United States. *See Wang v. BIA*, 437 F.3d 270, 274 (2d Cir. 2006) ("[I]t would be ironic, indeed, if petitioners like Wang . . . were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities."). Our laws should not be interpreted to allow that result.

We agree with our sister circuits and conclude that the BIA reasonably interpreted §§ 1158(a)(2)(D) and 1229a(c)(7)(C)(ii) of Title 8 as requiring an alien subject to a final order of removal for 90 days or more to make a successful motion to reopen her proceedings prior to consideration of a successive application for asylum.

IV.

For the reasons set forth above, we DENY Zhang's petition for review.