PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HUI ZHENG, a/k/a Hui Chen,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 08-1255

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: January 27, 2009

Decided: April 16, 2009

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Petition for review denied by published opinion. Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Joshua E. Bardavid, LAW OFFICE OF JOSHUA BARDAVID, New York, New York, for Petitioner. Zoe Jaye Heller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Gregory G. Katsas, Assistant Attorney General, Civil Division, Douglas

E. Ginsburg, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

DUNCAN, Circuit Judge:

Hui Zheng, a Chinese citizen, appeals a final order from the Board of Immigration Appeals ("BIA") dismissing her motion to file a successive application for asylum almost eight years after she filed her initial asylum application. She argues that, contrary to the BIA's decision, her changed personal circumstances allow her to file such an untimely successive asylum application without filing a motion to reopen. In the alternative, she argues that any requirement that an asylum applicant file a motion to reopen unlawfully conflicts with the United States's obligations under the Convention Against Torture ("CAT") and the U.N. Protocol Relating to the Status of Refugees ("U.N. Protocol"), which prohibit returning an alien to persecution and torture. Finding no merit in these contentions, we join the eight other circuits that have considered this issue and affirm the BIA.

I.

Hui Zheng is a native and citizen of the People's Republic of China who attempted to enter the United States on August 14, 1998 using a false passport. An immigration officer found her inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an arriving alien who seeks admission to the United States without a valid entry or arrival document. Shortly thereafter, the former Immigration and Naturalization Service ("INS") issued Zheng a Notice to Appear, charging her with being inadmissible and subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Zheng appeared with counsel at a hearing on May 19, 1999. She conceded removability, but stated that she intended to seek asylum. She subsequently filed an Application for Asylum and Withholding of Removal, asserting that she feared persecution if she were to return to China because of China's population control program. At that time, she was unmarried and childless, but expressed her desire to marry and have multiple children. After a merits hearing on December 9, 1999, an immigration judge ("IJ") denied Zheng's asylum and withholding of removal applications. Zheng timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on January 10, 2000. On April 9, 2002, the BIA adopted and affirmed the IJ's decision and ordered Zheng deported. Zheng did not appeal the BIA's decision.

On February 25, 2005, Zheng filed with the BIA a motion to reopen based on changed circumstances. In the period since the prior hearing, she had married a United States citizen and had two children. In the motion to reopen, Zheng reiterated her fear of persecution based on China's one-child family planning policy. On April 14, 2005, the BIA denied Zheng's motion to reopen as untimely under 8 C.F.R. § 1003.2(c)(2), which allows an alien to file only one motion to reopen within 90 days of the entry of a final removal order. The BIA found that the birth of Zheng's children in the United States did not constitute changed circumstances arising in the "country of nationality" that would justify an exception under 8 C.F.R. § 1003.2(c)(3)(ii) to the time limits on filing a motion to reopen.[1] The Board also rejected Zheng's argument that she could file an untimely asylum application based on her changed personal circumstances under 8 U.S.C. § 1158(a)(2)(D). The BIA

---

[1]Title 8 C.F.R. § 1003.2(c)(3) states that the "time and numerical limitations" of 8 C.F.R. § 1003.2(c)(2) will not apply to a motion to reopen proceedings in order for the alien to apply for asylum or withholding of deportation "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available" at the initial removal hearing.

did acknowledge that section 1158(a)(2)(D) allows untimely asylum applications if the alien shows changed circumstances that "materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the one year period."[2] The BIA found, however, that this exception did not apply to an alien such as Zheng, who had completed her removal proceedings before the IJ and the BIA and had not departed before the time to move to reopen had expired. The BIA determined that Zheng, whose asylum application had been denied and who was subject to removal, was in a qualitatively different position than an alien who has missed the one-year asylum application deadline or who has not otherwise become subject to a final removal order. Zheng did not seek judicial review of this decision, either.

On April 24, 2007, Zheng filed a motion to file a successive asylum application (the "motion to file") before an IJ, again arguing that because of the birth of her two children in the United States, she would be forcibly sterilized if returned to China. She asserted in the motion that she could file a successive application for asylum under 8 C.F.R. § 1208.4,[3] that

---

[2]Title 8 U.S.C. § 1158(a)(2)(D) states as follows:

(D) Changed circumstances

An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

[3]Title 8 C.F.R. § 1208.4 states in relevant part:

Except as prohibited in paragraph (a) of this section, asylum applications shall be filed in accordance with paragraph (b) of this section.

(a) Prohibitions on filing. Section 208(a)(2) of the Act prohibits certain aliens from filing for asylum on or after April

a motion to reopen was not required to file such a successive asylum application, and that the IJ had jurisdiction over the motion to file. She also asserted that under the CAT and the U.N. Protocol, she should not be barred from seeking withholding of removal.

The IJ denied Zheng's motion to file on August 14, 2007, writing "MOTION DENIED" on the first page of her motion. Zheng timely appealed to the BIA on September 12, 2007, arguing that the IJ had failed to render a proper, reviewable decision; that she did not need to file a motion to reopen; and that the IJ had violated her due process rights by failing to address her request for withholding of removal and for protection under the CAT.

The BIA dismissed Zheng's appeal on February 5, 2008. The BIA treated Zheng's motion to file a successive asylum application as a motion to reopen and denied it as untimely and numerically barred under 8 C.F.R. § 1003.2(c). The BIA also found that the IJ had lacked jurisdiction over Zheng's motion to file and that jurisdiction lay with the BIA.

Zheng now appeals, arguing that the IJ had jurisdiction over her motion to file and that filing a motion to reopen is not a necessary predicate to the filing of a successive, untimely asylum application under 8 U.S.C. § 1158(a)(2)(D). She also contends that requiring an alien to file a motion to reopen conflicts with the CAT and the U.N. Protocol, which prohibit the return of an alien to a country where the alien will be subject to persecution. We consider her various arguments in turn.

---

1, 1997, unless the alien can demonstrate to the satisfaction of the Attorney General that one of the exceptions in section 208(a)(2)(D) of the Act applies. . . .

Section 208(a)(2)(D) of the Immigration and Nationality Act outlines the "changed circumstances" exceptions quoted *supra* in footnote two. *See* 8 U.S.C. § 1158(a)(2)(D).

## II.

Under 8 U.S.C. § 1252(a)(2)(D), this court has jurisdiction to review constitutional claims and questions of law raised in a petition for review of a final order of removal. We review denials of motions to reopen claims for asylum and claims for withholding of deportation under an abuse of discretion standard. *I.N.S. v. Doherty*, 502 U.S. 314, 323-24 (1992). The BIA's legal conclusions are reviewed de novo, although the BIA's interpretation of the Immigration and Nationality Act ("INA") "is entitled to deference and must be accepted if reasonable." *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

## III.

A brief outline of the applicable statutory and regulatory scheme will facilitate consideration of Zheng's substantive arguments. Title 8 U.S.C. § 1229a provides the procedure for removal proceedings. Under 8 U.S.C. § 1229a(a)(3), a removal proceeding "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States." Once removal proceedings have concluded, an alien may usually file only one motion to reopen removal proceedings for further adjudicative review, and must file that motion "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. §§ 1229a(c)(7)(A), 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). However, section 1229a(c)(7)(C)(ii) provides an exception to this 90-day deadline:

> There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for [asylum] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have

been discovered or presented at the previous proceeding.

*See also* 8 C.F.R. § 1003.2(c)(3)(ii).

Title 8 U.S.C. § 1158 provides the procedure for asylum applications. Under 8 U.S.C. § 1158(a)(2)(B), an alien must usually seek asylum by filing an application "within 1 year after the date of the alien's arrival in the United States." *See also* 8 C.F.R. § 1208.4(a)(2). An alien may only file one asylum application; section 1158(a)(2)(C) prohibits an alien from applying for asylum "if the alien has previously applied for asylum and had such application denied." However, section 1158(a)(2)(D) provides the following exception:

> An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

*See also* 8 C.F.R. § 1208.4(a)(4). Unlike section 1229a(c)(7)(C)(ii), which allows an alien to file a motion to reopen based on changed country circumstances, section 1158(a)(2)(D) permits an alien to file an untimely asylum application based on any "changed circumstances which materially affect the applicant's eligibility for asylum."

Title 8 C.F.R. § 1208.4(b)(3)(ii) states that an alien who wishes to file an asylum application "[a]fter completion of exclusion, deportation, or removal proceedings" must do so "in conjunction with a motion to reopen pursuant to 8 CFR part 1003 where applicable, with the Immigration Court having jurisdiction over the prior proceeding."

IV.

We now turn to the three primary arguments that Zheng raises on appeal. First, Zheng asserts that the BIA erred in concluding that the IJ lacked jurisdiction to consider her 2007 motion to file a successive asylum application. Second, she argues that she did not need to file a motion to reopen in order to file such a successive asylum application, and that the BIA abused its discretion in failing to consider her substantive arguments on this issue. Lastly, she contends that to the extent a motion to reopen is a necessary predicate to the filing of a successive asylum application, such a requirement is unlawful because it conflicts with the CAT and U.N. Protocol, which prohibit the return of an alien to a country where the alien will be subject to persecution. We address these arguments separately below.

A.

Zheng first argues that the IJ had jurisdiction over her 2007 asylum application, such that the IJ erred in denying her motion to file a successive asylum application and the BIA erred in concluding that the IJ lacked jurisdiction to consider it. To support this contention, she relies on 8 C.F.R. § 1208.2(b), entitled "Jurisdiction of Immigration Court in general," which states as follows:

> Immigration judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served a Form I-221, Order to Show Cause; Form I-122, Notice to Applicant for Admission Detained for a Hearing before an Immigration Judge; or Form I-862, Notice to Appear, after the charging document has been filed with the Immigration Court.

She also cites 8 C.F.R. § 1208.4(b)(3)(ii), which states that aliens whose removal proceedings have concluded must file asylum applications "with the Immigration Court having juris-

diction over the prior proceeding." Zheng contends that this language gives "the Immigration Court jurisdiction" over her successive asylum application. Petr.'s Br. at 17.

Zheng's reliance on 8 C.F.R. § 1208.4(b)(3)(ii) undercuts her jurisdictional argument. Zheng does not deny that her removal proceedings have concluded and that she is subject to a removal order. Under section 1208.4(b)(3)(ii), she was required to file her asylum application "with the Immigration *Court* having jurisdiction over the prior proceeding." 8 C.F.R. § 1208.4(b)(3)(ii) (emphasis added). The BIA was the adjudicative entity that last had jurisdiction over her case. The record shows that the BIA handled Zheng's appeal of her 1999 removal order, as well as her 2005 subsequent motion to reopen, which was the last motion she filed with any immigration adjudicative entity before her motion to file a successive asylum application in 2007. Under 8 C.F.R. § 1208.4(b)(3)(ii), after her removal proceedings concluded, Zheng was required to file any subsequent asylum application with the BIA. The BIA did not err in finding that the IJ lacked jurisdiction to consider Zheng's motion to file a successive asylum application.

## B.

Zheng also argues that she was not required to file a motion to reopen—and was therefore not subject to the 90-day deadline applicable to motions to reopen under 8 U.S.C. § 1229a(c)(7)(C)—when she attempted to file a successive asylum application in 2007. She also argues that the BIA erred in failing to consider her arguments on this issue.

Zheng bases her argument that she may file a successive asylum application on 8 U.S.C. § 1158(a)(2)(D), which allows an alien to file such an application at any time based on "changed circumstances which materially affect the applicant's eligibility for asylum." She contends that section 1158(a)(2)(D) "specifies the right to have an asylum claim

after an IJ proceeding has closed" and points out that the statute does not state that the alien must file a motion to reopen in conjunction with a "changed circumstances" asylum application. Petr.'s Br. at 22. To support her argument, she highlights language in both the INA and its implementing regulations that purportedly allows for exceptions to the requirement of a motion to reopen. For example, she stresses that under 8 U.S.C. § 1229a(a)(3), removal proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States"—but only "[u]nless otherwise specified in this chapter." She contends that section 1158(a)(2) specifies such an instance where an IJ may determine an alien's admissibility outside a removal proceeding. She further notes that under 8 C.F.R. § 1208.4(b)(3), an alien whose removal proceedings have concluded must file an asylum application "in conjunction with a motion to reopen . . . *where applicable*." 8 C.F.R. § 1208.4(b)(3) (emphasis added). She stresses that the words "where applicable" indicate that a motion to reopen is not required in all instances and argues that "successive applications submitted pursuant to 8 U.S.C. § 1158(a)(2) are one instance" where a motion to reopen is not required. Petr.'s Br. at 21.

In response, the government relies primarily on *In re C-W-L-*, 24 I. & N. Dec. 346 (BIA 2007), which concerned a Chinese alien in a situation identical to Zheng's. In *C-W-L-*, a Chinese alien entered the United States in 1990 without a valid entry document. Immigration authorities determined that he was inadmissible and issued him a Notice to Appear in 1997. While still in the United States, he married a lawful permanent resident alien of the United States in 1998 and had two children in 1999 and 2000. He applied for asylum and withholding of removal based on the birth of his children and China's one-child family planning policy. In 2001, an IJ denied the alien's asylum application and the BIA affirmed this decision in 2003. In 2004, after the birth of his third child, the alien filed a "Motion to File Successive Asylum Application pursuant to 8 C.F.R. § 208.4," again arguing that he could

show a well-founded fear of persecution if returned to China. In the motion, he argued that a motion to reopen was not necessary and that the general one-year deadline and one-application limitation on asylum applications did not apply to him.

In denying the alien's motion, the BIA rejected his contention that 8 U.S.C. § 1158(a)(2)(D), "standing alone, is a basis for filing an additional asylum application, notwithstanding the fact that he is currently under an order of removal and is barred . . . from filing an additional asylum application, except where accompanied by a timely motion to reopen or justified by changed country conditions." 24 I. &. N. Dec. at 348. The BIA held that section 1158(a)(2)(D) "simply does not apply to a situation where an asylum applicant has already been ordered removed." *Id.* at 350. The BIA stressed that 8 U.S.C. § 1229a(c)(7)(C), which allows an alien to file only one motion to reopen within 90 days of a final removal order, "applies to situations like the one at bar, where an alien seeks to reopen proceedings in which he previously was ordered removed from the United States." *Id.* at 349. To allow an alien to file "an asylum application at any time, including when a final order of removal is in place, would render section [1229a(c)(7)(C)(ii) and its accompanying regulation, 8 C.F.R. § 1003.2(c)(3)(ii)] superfluous and would negate the effect of regulations granting jurisdiction to this Board and the Immigration Courts." *Id.* at 351.

The BIA resolved the tension between 8 U.S.C. § 1158(a)(2)(D)—which purports to allow an alien to file an asylum application whenever the alien can show material changed circumstances—and 8 U.S.C. § 1229a(c)(7)(C)—which allows only one motion to reopen within 90 days of a final order of removal unless the alien can show changed country conditions—by concluding that the former "*applies in conjunction with*" the latter. *Id.* at 353. Before the entry of a final removal order, or within the 90-day deadline for a motion to reopen, an alien may file an asylum application

showing material changed circumstances. "Outside of those circumstances, changed country conditions must be shown." *Id.*

The government argues that *C-W-L-* constitutes the BIA's interpretation of its governing statute, the INA, and is therefore entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The government also emphasizes that the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have deferred to the BIA's interpretation in *C-W-L-* and have held that an alien must comply with the timeliness and numerical requirements on motions to reopen when seeking adjudication of a new asylum application after a final removal order has been issued. *See Liu v. Attorney General*, ___ F.3d ___, 2009 WL 250102 (3d Cir. Feb. 4, 2009); *Wei v. Mukasey*, 545 F.3d 1248 (10th Cir. 2008); *Zhang v. Mukasey*, 543 F.3d 851 (6th Cir. 2008); *Yuen Jin v. Mukasey*, 538 F.3d 143 (2d Cir. 2008); *Zhen Dong v. Mukasey*, 286 F. App'x 146 (5th Cir. July 11, 2008); *Chen v. Mukasey*, 524 F.3d 1028 (9th Cir. 2008); *Zheng v. Mukasey*, 509 F.3d 869 (8th Cir. 2007); *Cheng Chen v. Gonzales*, 498 F.3d 758 (7th Cir. 2007).

Like our sister circuits, we defer to the BIA's reasonable interpretation of the asylum procedures outlined in 8 U.S.C. § 1158(a)(2)(D) and the removal and motion to reopen procedures outlined in 8 U.S.C. § 1229a(c)(7). Although Zheng argues that *C-W-L-* renders section 1158(a)(2)(D) meaningless, the BIA noted in *C-W-L-* that to give section 1158(a)(2)(D) the meaning Zheng proposes would consequently render section 1229a(c)(7)(C) superfluous. The BIA's harmonization of section 1158(a)(2)(D) and section 1229a(c)(7)(C) is a reasonable interpretation of the INA and does not constitute an abuse of discretion. *See Zhang*, 543 F.3d at 858 (holding that "the BIA's interpretation comports with the text and structure of the statute," as well as "with the acknowledged policies underlying our asylum law"). Zheng's argument is insufficient to overcome the deference that must

be given to agency interpretations of their own governing statutes. *See Chevron*, 467 U.S. at 837.

We defer to the BIA's reasonable interpretation of the INA in *C-W-L-*. Because Zheng failed to file a motion to reopen showing changed country conditions with her successive asylum application, the BIA did not err in dismissing her motion to file a successive asylum application. Nor did it err in refusing to consider her arguments that a motion to reopen was not required.

## C.

Lastly, Zheng argues that she was entitled to a hearing on her claim for withholding of removal under the Convention Against Torture and the U.N. Protocol. She contends that "the denial of the right to a hearing on a claim for asylum, withholding of removal, and Convention Against Torture claim violates U.S. law as well as obligations under the U.N. Protocol Relating to the Status of Refugees, the Convention Against Torture, and [her] Due Process rights." Petr.'s Br. at 33. Zheng bases this argument in part on 8 U.S.C. § 1231(b)(3)(A), which states that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Arguing that the CAT and U.N. Protocol impose a non-discretionary duty on the United States to provide asylum, Zheng emphasizes that even an alien subject to a final removal order may seek relief from the Attorney General under section 1231(b)(3)(A).

The government argues in response that Congress has established a "specific, domestic statutory scheme" to provide asylum to refugees and points out that "[n]either the U.N. Protocol nor the CAT [is] self-executing." Respt.'s Br. at 35, 36. Noting that the U.N. Protocol and the CAT "do not create pri-

vate rights that petitioners can enforce beyond those contained in their implementing statutes and regulations," the government emphasizes that Zheng has failed to establish a "right to any relief available under these provisions." *Id.* at 35. The government contends that the procedures established by the INA and its implementing regulations "provide[ ] the controlling authority for determining whether refugee status may be conferred on an alien" and that "[g]eneralized statements from international sources provide no foundation to displace those authorities with a conclusion contrary to the one reached by the Board in this case." *Id.* at 38.

We find the government's position persuasive. First, to the extent that Zheng argues that 8 U.S.C. § 1231(b)(3)(A) allows her to seek relief without filing a motion to reopen showing changed country circumstances, the plain text of 8 U.S.C. § 1229a(c)(7)(C) contradicts this contention. Section 1229a(c)(7)(C), in placing timeliness and numerical limitations on motions to reopen, explicitly encompasses section 1231(b)(3)(A). *See* 8 U.S.C. § 1229a(c)(7)(C)(ii) ("There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 1158 *or 1231(b)(3)* of this title *and is based on changed country circumstances* arising in the country of nationality or the country to which removal has been ordered . . . ." (emphasis added)).

Second, as the government points out, neither the U.N. Protocol nor the CAT is self-executing. *See Chen*, 524 F.3d at 1033 (rejecting a claim similar to Zheng's on the ground that the alien "has not established her right to any relief that may be available under any of these provisions . . . and she has failed to show how any of them is violated by the application of reasonable procedural requirements for the adjudication of her claims"). Rather, they are effectuated through a statutory scheme that Congress has established, and which the Attorney General has implemented through regulations governing both the BIA and the procedures available to aliens seeking entry to the United States. To the extent that Zheng claims a right

to a hearing on her asylum application based on the U.N. Protocol or the CAT, such a claim is not cognizable. *Cf. In re Medina*, 19 I. & N. Dec. 734, 740 (BIA 1988) (declining to find that the Fourth Geneva Convention is "self-executing"—i.e., that it creates "rights that are privately enforceable by individuals in the absence of implementing legislation"—and noting that "the nature of the requirement to 'ensure respect' for the Convention raises foreign policy issues committed to the political branch of government . . . rather than [to] conventional adjudication" (citations omitted)).

## V.

For the reasons stated above, the BIA's decision is affirmed. Zheng's petition for review is

*DENIED*.