NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0860n.06

No. 11-3874

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 08, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MARTA PRECAJ, | ) | ON PETITION FOR REVIEW |
|  | ) | FROM THE BOARD OF |
| Petitioner, | ) | IMMIGRATION APPEALS |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ERIC H. HOLDER, JR. Attorney General, | ) |  |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |
|  | ) |  |

Before: BOGGS and WHITE, Circuit Judges, and BLACK, District Judge[*].

**HELENE N. WHITE, Circuit Judge**. Petitioner Marta Precaj ("Precaj") seeks review of

the Board of Immigration Appeals' ("BIA") dismissal of her second motion to reopen removal

proceedings. We affirm.

## I.

Precaj is a native and citizen of Albania. On or about June 15, 2001, Precaj entered the

United States without inspection, arriving at or near Brownsville, Texas. She was apprehended by

the Department of Homeland Security near the border and served with a Notice to Appear, subject

to removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(A)(i). On March 12,

---

[*] The Honorable Timothy S. Black, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

2002, Precaj appeared in immigration court in Detroit, Michigan, where she admitted to the allegations in the Notice to Appear and conceded removability. On June 11, 2002, she submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture.

In her asylum application, Precaj claimed that she and her family had been subjected to persecution relating to her father's association with the Albanian Democratic Party. She stated that after the Socialist Party took control in 1997, her family received numerous threatening phone calls. Specifically, her family was warned that should her father refuse to leave the Democratic Party, Precaj would be kidnapped and sold to gangs in Italy that would force her into prostitution. Precaj further claimed that on March 10, 2001, at the age of nineteen, four people came to her home while her father was away, forced themselves into her house by breaking open the door, and took Precaj from the home against her will. However, her assailants' vehicle broke down later that evening and Precaj was able to flee. She ran to a nearby house and was let inside after the homeowners heard her yelling and screaming. Her family was contacted the next day and came to take her home. Fearing that her assailants would soon return to kidnap or kill her, Precaj fled Albania and arrived in the United States from Mexico several months later.

In September 2002, after hearing Precaj's testimony in support of her asylum application, the Immigration Judge ("IJ") made an adverse credibility determination, and denied Precaj's application for relief and protection. The IJ held that where "[c]redibility is a crucial aspect of most asylum cases . . . the respondent does not carry her burden." Specifically, the IJ noted that in her testimony, Precaj "was uncertain about many matters, was vague on many matters, [and] changed her

testimony." The IJ also noted that Precaj did not corroborate any part of her claims or testimony with credible information, and the only evidence that she did supply was of questionable authenticity and "raise[d] more questions about [her] credibility than it solve[d] in her favor." Additionally, the IJ found that Precaj had failed to produce documents to establish her identity as a citizen of Albania. Neither was she able to establish when, where, and how she entered the United States, calling into question the timeliness of her asylum application.[**]

The following year, Precaj appealed the determination of the IJ, challenging the adverse credibility finding on the grounds that the inconsistencies in her appeal were "minor and irrelevant," and claiming that the IJ's findings of no past persecution and no well-founded fear of future persecution were erroneous. On March 24, 2004, the BIA upheld the adverse credibility determination and dismissed the appeal, holding in a per curiam decision that Precaj's testimony contained material inconsistencies, both within the asylum application itself and when compared against the corroborating evidence. Furthermore, the BIA noted that Precaj had failed to explain these inconsistencies either during the proceedings below or on appeal. Precaj filed a petition for review in this court, which we denied on October 26, 2005.

In August of 2009, Precaj filed a motion to reopen with the BIA pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii), based on new and material evidence regarding changed country conditions. As part of her appeal, Precaj submitted several affidavits from her parents and sister in Albania, detailing continued threats of violence against her family, as well as an alleged attack in which her

---

[1] Under 8 U.S.C. § 1158(a)(2)(B), an alien has the burden of demonstrating by clear and convincing evidence that the application has been filed within one year after the date of the alien's arrival in the United States.

mother was injured. Additionally, Precaj submitted several recent newspaper and periodical articles that described the volatile political situation in Albania. However, the BIA denied Precaj's motion because it was outside of the statutory ninety-day limitation period. Although § 1229a(c)(7)(C)(ii) allows the BIA to consider untimely motions when the petitioner submits evidence of changed circumstances in the country of nationality, the BIA found that the evidence presented was insufficient to fall within the exception. The BIA held that Precaj's claim was "essentially the same as it was below, *i.e.* that [Precaj] faces persecution in Albania because of her family's activities in support of the Democratic Party." Furthermore, the BIA noted that the motion to reopen did not address the IJ's adverse credibility finding, and that Precaj had submitted no evidence to establish her identity or her relationship to the persons alleged to be her parents and sister.

In February of 2011, Precaj filed a second motion to reopen, again basing her claim on new and material evidence of changed country conditions in Albania. In addition to her birth certificate, Precaj submitted as evidence an expert declaration of Dr. Brian Williams, associate professor of Islamic History at the University of Massachusetts, Dartmouth, discussing the prostitution trade and kidnapping of young girls in Albania, as well as several more news articles regarding organized crime and human trafficking. On July 18, 2011, the BIA denied this second motion to reopen as untimely and number-barred. The BIA again noted that Precaj failed to address the adverse credibility finding of the IJ. Additionally, the BIA held that none of the new evidence demonstrated conditions significantly different from those that existed at the time of the 2002 hearing, and noted that some of the evidence presented actually pre-dated the 2002 hearing. Finally, the BIA concluded that the evidence failed to establish a material change in conditions, and therefore, Precaj could not

demonstrate that she falls within the exception to permit an untimely motion to reopen. This petition for review followed.

**II.**

Motions to reopen removal proceedings are governed under 8 U.S.C. § 1229a(c)(7), which states in subsection (A) that an alien may typically file only one motion to reopen. Further, subsection (C) requires that the motion "be filed within ninety days of the date of entry of a final administrative order of removal." However, these time and number limitations may be waived if the purpose of the motion is to apply for asylum or withholding of deportation "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered," and the petitioner presents evidence that is "material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).

The BIA is vested with "broad discretion to grant or deny such motions," and there are "at least three independent grounds on which the BIA might deny a motion to reopen – failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). Motions to reopen are particularly disfavored in deportation proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Id.* This rationale is related to a "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *I.N.S. v. Abudu*, 485 U.S. 94, 95 (1988).

Finally, in the context of motions to reopen removal proceedings, the moving party bears the "heavy burden" of providing new and material evidence sufficient to overcome the statutory time and number limitations.

Given the broad discretionary power granted to the BIA, the denial of a motion to reopen is properly reviewed on appeal under the "abuse of discretion" standard. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). Under this standard, the BIA's denial of a motion to reopen will be upheld unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (citing *Allabani v. Gonzales,* 402 F.3d 668, 675 (6th Cir. 2005) (alterations in original) (citations omitted)).

It is undisputed that Precaj's second motion to reopen, filed nearly seven years after the BIA's final order of removal, is time- and number-barred, unless Precaj can present previously unavailable and undiscoverable material evidence of changed country conditions in Albania. On appeal, Precaj argues that the BIA abused its discretion in basing its denial of her motion to reopen on Precaj's failure to provide new and material evidence of changed country conditions and the IJ's adverse credibility finding. Precaj further argues that the BIA violated her due process rights when it failed to consider all of the evidence presented in the motion to reopen. We will address each argument in turn.

**III.**

**A.**

Precaj first argues that the BIA erred in denying her motion to reopen based on the IJ's adverse credibility finding. Precaj submits that the IJ did not make any "specific" adverse credibility findings, but rather "merely summarized . . . by stating that Ms. Precaj had not met her burden of proof."

This argument is without merit. In the IJ's denial of her asylum application, the IJ noted that "[c]redibility is a crucial aspect of most asylum cases. The bottom line, to be politely put, is that the respondent does not carry her burden." The court continued:

> Plus, as in the case sub judice, the weaker the applicant's testimony the greater the need for credible corroborative evidence . . . The Court notes that the respondent was uncertain about many matters, was vague on many matters, changed her testimony . . . on one important matter, and this case cries out for corroboration.

The IJ then went on to note numerous inconsistencies between her asylum application, testimony, and corroborating evidence. The IJ, in his decision, was clear in noting which portions of Precaj's testimony strained credibility. Accordingly, the BIA did not abuse its discretion in relying on the IJ's adverse credibility finding to reach its decision. *See Zhang v. Mukasey*, 543 F.3d 851 (6th Cir. 2008) (holding that it was not an abuse of discretion for the BIA to consider an unrebutted adverse credibility determination in declining to credit evidence provided in a motion to reopen).

**B.**

Precaj also argues that the BIA erred in finding that the current conditions in Albania, as described in Dr. Williams's declaration and in the several periodical articles submitted as evidence,

was "substantially similar to those that existed at the time of the respondent's 2002 hearing."

However, as the BIA pointed out, several of the newspaper articles submitted by Precaj and referenced in Dr. Williams's declaration actually predate Precaj's 2002 hearing. Precaj claims that the evidence submitted "was not previously available, and could not have been discovered or presented" at her 2002 hearing. However, Precaj does not attempt to explain why these pre-2002 materials were unavailable or undiscoverable at her initial hearing. Because these articles were written before Precaj's immigration hearing and Precaj has not adequately explained why these articles were previously unavailable and undiscoverable, the BIA properly determined that the articles do not demonstrate a change in country conditions since Precaj's initial hearing in immigration court. Additionally, although it is true that Dr. Williams's declaration and several other articles were written or published after 2002 and therefore were unavailable at the time of Precaj's asylum hearing, the mere timeliness of this evidence is not dispositive. The evidence must also "establish[] the existence of materially changed conditions" and "must offer reasonably specific information showing a real threat of individual persecution." *Harchenko v. I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004). The post-2002 evidence submitted with Precaj's motion fails to do either.

Additionally, the BIA did not abuse its discretion in holding that the newly submitted evidence was insufficient to demonstrate a change in conditions that was material to Precaj's claims for relief. The BIA held that both Dr. Williams's declaration and the relevant post-2002 newspaper articles did not establish changed country conditions with respect to human trafficking, mafia violence, and politically-motivated violence. In Precaj's initial immigration hearing in 2002, she submitted a Department of State 2002 Country Report on Albania, as well as a 2001 Profile on

Albania, both of which described a situation very similar to that depicted in Dr. Williams's declaration eight years later. Indeed, as the government correctly points out, Dr. Williams's declaration, on which Precaj relies heavily, does not demonstrate a significant change in conditions in Albania since 2002, but rather describes issues regarding human trafficking and organized crime that date back to the beginning of his studies in the 1980s.

Because Precaj has not demonstrated that the BIA erred in upholding the IJ's adverse credibility finding and failed to present sufficient material evidence of changed country conditions to waive the statutory time limitation, the BIA did not abuse its discretion in denying Precaj's second motion to reopen removal proceedings.

## IV.

Despite the fact that there is no constitutional right to asylum, aliens in the United States have a due process right to a fair immigration hearing. *See Bridges v. Wixon*, 326 U.S. 135, 160 (1945) (holding that the power to deport aliens is limited by the due process guarantees of a fair hearing). Implicit in these guarantees is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In the context of immigration proceedings, "due process entitles a person to factfinding based on a record produced before the decisionmaker and disclosed to that person . . . and an individualized determination of his interests . . . . Finally, it requires that the decisionmaker actually consider the evidence and argument that a party presents." *de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994) (quotations and citations omitted).

In her due process claim, Precaj argues that the BIA erred by failing to consider the evidence submitted as part of her second motion to reopen. Relying on the Third Circuit case, *Abdulai v. Ashcroft*, Precaj argues that the BIA had a responsibility to "actually consider the evidence and argument that a party presents." 239 F.3d 542, 549 (3d Cir. 2001). In failing to do so, Precaj argues the BIA violated her due process guarantees to an individualized determination of her interests.

In *Abdulai*, the court stated that "the question for due process purposes is not whether the BIA reached the *correct* decision; rather, it is simply whether the BIA made an individualized determination of [the petitioner's] interests." 239 F.3d at 550. Because "agency action is entitled to a presumption of regularity, [the petitioner] bears the burden of proving that the BIA did not review the record when it considered the appeal." *Id.* (brackets in original) (citation omitted). Furthermore, it is not necessary that the BIA's opinion "mention every piece of evidence before it or every logical element of a motion." *See Zhang*, 543 F.3d at 854 ("[T]he Board need only analyze and explain the basis on which it decided against [the petitioner]"). Rather, a due-process violation will be found only where "the BIA's decision contained *no indication* that it had undertaken a particularized consideration of [the petitioner's] case." *Abdulai*, 239 F.3d at 550 (citing *Llana-Castellon v. INS*, 16 F.3d 1093 (10th Cir.1994)) (brackets in original).

Precaj claims that in the July 18, 2011 decision, the BIA "completely ignored" the additional evidence submitted with her motion. We disagree. The BIA, in its decision, clearly indicated that it *had* considered the evidence submitted, and concluded that the evidence was either inadmissible as not previously unavailable and undiscoverable, or insufficient to establish changed country conditions in Albania. The BIA specifically stated that Precaj's evidence depicted conditions that

were "substantially similar" to those established in her 2002 hearing.  Although the BIA does not specifically reference each item of evidence presented, its analysis would not be possible if the BIA had, as Precaj argues, "completely ignored" the evidence provided.

Given the serious concerns relating to Precaj's unrebutted adverse credibility determination and the strong public interest in prompt and efficient deportation proceedings, remanding in this case "because the Board did not needlessly discuss documents on points of fact not material to its decision would frustrate this policy of finality in immigration proceedings without any benefit." *Zhang*, 543 F.3d. at 855.

## V.

For the foregoing reasons, Precaj has not demonstrated that the BIA abused its discretion in denying her motion reopen, or that the BIA's failure to consider her arguments amounted to a violation of her due process rights.  Accordingly, we **AFFIRM** the BIA's denial of her motion to reopen removal proceedings.