NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0508n.06
Case No. 24-3979

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ENZO LEOMIR CANACA RODRIGUEZ,

    Petitioner,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 30, 2025
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

O P I N I O N

Before: STRANCH, BUSH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Petitioner Enzo Leomir Canaca Rodriguez seeks review of the Board of Immigration Appeals' order affirming an immigration judge's denial of his application for cancellation of removal. We deny the petition for review.

I.

Petitioner Enzo Leomir Canaca Rodriguez, a native and citizen of Honduras, has lived in the United States since 2001 and has not left the country since 2005. In 2017, Canaca applied for asylum. In mid-January 2020, Canaca received a Notice to Appear, which placed him in removal proceedings. In his written pleadings, Canaca admitted the factual allegations in his Notice to Appear and conceded the charge of removability. The immigration judge ("IJ") sustained the charge and found him removable. Canaca applied for cancellation of removal and withdrew his

application for asylum. He then testified in support of his application for cancellation of removal in July 2022.

Canaca testified that he is married with two children. His wife, Maria, is from Mexico and has Deferred Action for Childhood Arrivals ("DACA") status, and his two children, Zoey and Enzo, are United States citizens. At the time of the merits hearing, Zoey and Enzo were 7 and 5 years old, respectively, and Zoey had been in school for one year while Enzo was due to start in August. Both children are enrolled in a private Christian school, for which Canaca pays. Zoey participates in gymnastics, ice-skating, and piano lessons, and Enzo participates in gymnastics, ice-skating, and soccer. Zoey and Enzo speak both English and Spanish, and they have no health or medical-related issues.

Canaca owns a construction company called Bethel Construction, which employs six to nine people, including his wife. Maria works as the company's accountant. Canaca and his wife receive a monthly salary of $8,000, and Canaca has about $1.5 million in assets, including real estate investments.

Canaca testified that if he were to return to Honduras, his children, who have never been to Honduras, and his wife would relocate with him. Canaca has family in Honduras, as his father and his four siblings reside there. Canaca expressed concern about the danger of living in Honduras because his cousin was murdered and one of his brothers was shot in the leg.

Canaca believes his children would not adapt to living in Honduras because they have never been there before, and he believes the transition would cause them emotional and psychological harm. He explained that the children would not have the same educational opportunities in Honduras as they would in the United States. Canaca also believes that it would

be difficult for him to find employment in Honduras because of his age, lack of experience, and high unemployment rates.

At the end of Canaca's testimony, the government stipulated to three of the elements for cancellation of removal, namely that Canaca (1) had satisfied the physical presence requirement, (2) had good moral character, and (3) had no disqualifying criminal history, but the government disputed that Canaca met the exceptional and extremely unusual hardship requirement. In addition to his testimony, Canaca submitted other evidence, including, as relevant here, articles regarding country conditions in Honduras, which discussed, *inter alia*, the impact of gangs on youth, the quality of the education system, and the emotional effects of a parent's deportation on children.

After the hearing, the IJ issued an oral decision denying Canaca's application for cancellation of removal, finding that Canaca had not demonstrated that his removal would result in exceptional and extremely unusual hardship to his U.S. citizen children. The Board of Immigration Appeals ("BIA") affirmed without opinion. Canaca now petitions this court for review.

II.

To be eligible for cancellation of removal, Canaca must establish that (1) he has been physically present in the United States for a continuous period of at least ten years, (2) he is a person of good moral character, (3) he has not been convicted of a qualifying offense, and (4) his "removal would result in exceptional and extremely unusual hardship" to a qualifying United States citizen or legal permanent resident. 8 U.S.C. § 1229b(b)(1). Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly. *See Diaz-Zanatta v. Holder*, 558 F.3d 450, 454 (6th Cir. 2009).

This court has jurisdiction to review the IJ's hardship determination for cancellation of removal, which presents a mixed question of law and fact. *See Wilkinson v. Garland*, 601 U.S. 209, 212 (2024); *Singh v. Rosen*, 984 F.3d 1142, 1154 (6th Cir. 2021). We, however, "lack jurisdiction over factual findings undergirding the conclusion that an immigrant's removal would not cause 'exceptional and extremely unusual hardship' to a relative." *Hernandez v. Garland*, 59 F.4th 762, 767 (6th Cir. 2023) (quoting *Singh*, 984 F.3d at 1149–50, 1154–55). Our review is thus limited to applying the facts as found by the IJ to the legal standard. *See Wilkinson*, 601 U.S. at 225.

The question of what standard of review applies to the hardship inquiry remains unresolved in this circuit. *See Moctezuma-Reyes v. Garland*, 124 F.4th 416, 423 (6th Cir. 2024); *Trinidad-Contreras v. Bondi*, No. 22-3352, 2025 WL 2732495, at \*3 (6th Cir. Sep. 25, 2025). The Supreme Court has instructed that the review must be "deferential." *Wilkinson*, 601 U.S. at 225. The extent of that deference, however, is an open question. Although the government asks the court to adopt the substantial evidence standard of 8 U.S.C. § 1252(b)(4)(B), the court need not decide the issue, as Canaca cannot prevail under any level of deference.

### III.

At issue is whether the IJ erred in concluding that Canaca's removal would not result in exceptional and extremely unusual hardship to his U.S. citizen children. For the hardship to be exceptional and extremely unusual, it must be "rare" and "well outside the norm." *Moctezuma-Reyes*, 124 F.4th at 421–22. In other words, the hardship sustained by the qualifying relatives must be "significantly different from or greater than the hardship that a deported alien's family normally experiences." *Id.* at 422. Typical and expected hardships may include "the loss of financial prospects, separation from loved ones, and reduced educational opportunities." *Id.* The

court must consider all hardship factors "in the aggregate to determine whether the qualifying relative will suffer hardship that rises to the level of exceptional and extremely unusual." *Wilkinson*, 601 U.S. at 215 (internal quotation marks omitted). The exceptional and extremely unusual hardship standard is an "onerous standard," *Valdez-Arriaga v. Barr*, 778 F. App'x 380, 383 (6th Cir. 2019), that "must be limited to truly exceptional situations," *Moctezuma-Reyes*, 124 F.4th at 424 (internal quotation marks and citation omitted).

Canaca argues that the IJ failed to consider evidence in the record in its assessment of hardship. As an initial matter, the IJ "reviewed, considered, and g[a]ve[] the appropriate weight" to "[a]ll exhibits that were moved into evidence . . . even if not specifically mentioned in [the] oral decision." Administrative Record ("A.R.") at 53. "The agency's decision is entitled to a presumption of regularity and thus a presumption that the evidence was considered." *Aoraha v. Gonzales*, 209 F. App'x 473, 476 (6th Cir. 2006). Accordingly, the agency "need not, and should not, 'mention every piece of evidence before it.'" *Navarro v. Holder*, 505 F. App'x 441, 447 (6th Cir. 2012) (quoting *Precaj v. Holder*, 491 F. App'x 663, 669 (6th Cir. 2012)).

Canaca first points to evidence he claims the IJ failed to consider related to the impact of gangs on youth in Honduras, particularly as it relates to violence against children, the loss of safe places for children to play, and danger faced by youth on the way to school. The IJ, however, acknowledged that "[t]here is some evidence related to the impact gang activities [have] on safety and education." A.R. at 56. It nonetheless concluded that "the evidence is insufficient to establish that the Respondent and his family could not settle safely somewhere in Honduras." *Id.*

Canaca also points to evidence regarding the quality of the education system in Honduras. Although the IJ did not specifically discuss the article that Canaca cites, which it need not do, *see Navarro*, 505 F. App'x at 447, the IJ did consider educational issues. The IJ noted that Canaca

had "not researched schools" and that although there was "evidence related to the impact gang activities [have] on safety and education," that evidence was insufficient to show that he "and his family could not settle safely somewhere in Honduras." A.R. at 56. Even if the IJ had failed to consider educational issues, "diminished educational options alone do not establish the required hardship," and Canaca "did not show that his children would be deprived of all schooling or of an opportunity to obtain any education." *Singh*, 984 F.3d at 1154–55 (internal quotation marks and citation omitted).

Next, Canaca highlights a study showing how the deportation of a parent impacts the risk of mental health conditions in a child. The IJ considered how the children would be "emotionally impacted by being uprooted from the United States and taken to Honduras, a country they've never visited," and the IJ further acknowledged that Canaca had "established that the children would detrimentally suffer on some level." A.R. at 55–56. In any event, "emotional strains are the typical results of removal; they aren't rare." *Moctezuma-Reyes*, 124 F.4th at 423.

Canaca contends that the IJ "failed to recognize [his] lack of experience in the construction industry in Honduras, lack of employment as well as crime and violence that would make [him] face uncertainty in finding employment in Honduras." ECF No. 16, PageID 27. Regardless of whether the IJ considered this evidence, Canaca "hasn't shown that he won't be able to work in [Honduras], even if getting a job there may prove difficult." *Moctezuma-Reyes*, 124 F.4th at 423. The IJ further found that Canaca's "significant assets will aid the family in resettling in Honduras and likely mitigate many of the potential effects of such a transition." A.R. at 56; *See Barrios-Ortega v. Garland*, No. 23-3292, 2024 U.S. App. LEXIS 6675, at *6 (6th Cir. Mar. 20, 2024) (declining to overturn the agency's determination of lack of exceptional and extremely unusual

hardship where petitioner owned "more than $70,000 in assets, which . . . can be liquated [sic] to finance a new life in Mexico").

Finally, Canaca argues that the IJ "focused on the factors individually and failed to engage in a cumulative analysis of all relevant factors together." ECF No. 16, PageID 28. The IJ, in describing the standard, noted that "[a]ll relevant factors, even if not extreme individually, must be considered in the aggregate in determining whether exceptional and extremely unusual hardship exists." A.R. at 54. The IJ ultimately reached its conclusion after "[c]onsidering all hardships to the Respondent's qualifying relatives in the *aggregate*." *Id.* at 56 (emphasis added).

IV.

For these reasons, we deny the petition for review.