NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0133n.06
Filed: February 21, 2006

No. 04-4231

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **EFFAT MODARRESI, SARA DEHBOZORGI**, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioners, | ) | OF FINAL ORDER OF BOARD |
| | ) | OF IMMIGRATION APPEALS |
| **v.** | ) | |
| | ) | |
| **ALBERTO R. GONZALES,** | ) | **MEMORANDUM OPINION** |
| **ATTORNEY GENERAL**, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:    GUY, SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Petitioners Effat Modarresi and Sara Dehbozorgi petition the court for review of a final decision of the Board of Immigration Appeals ("BIA").  The BIA's decision affirmed without opinion an order of the Immigration Judge ("IJ") denying petitioners' motion to reopen.  In the motion to reopen, petitioners sought to rescind orders directing their removal to Iran. Finding no abuse of discretion, we affirm the BIA's decision.

**I**

Petitioners Effat Modarresi (born August 1, 1942) and Sara Dehbozorgi (born September 20, 1985), mother and daughter, are citizens of Iran.  It is undisputed that petitioners had obtained permanent resident status and were residing in California, at least intermittently, prior to 1999. Sometime in early 1999, Modarresi traveled to Iran, taking her minor daughter Sara along.  When

they returned to the United States in July 2002, they were questioned by an Immigration Inspector in Detroit about their authority to return to and stay in the United States. In sworn statements which they continue to affirm as accurate, petitioners stated that they did not have a permanent residence in the United States, that Iran was their country of permanent residence, and that they planned to visit family in the United States for three months before returning to Iran. They were allowed to enter, but were given notice that they were subject to removal and would have to appear before an immigration judge at a time, date and place to be set in the future.

After returning to California, petitioners received notice in April 2003 of a master calendar hearing before an immigration judge in Detroit in October 2003. Petitioners made a *pro se* letter request for a change of venue to the Immigration and Naturalization Service ("INS") office in San Francisco. Their request was denied by Immigration Judge Elizabeth Hacker on May 19, 2003 for the reason that there might be disputed issues of fact concerning petitioners' removability. With assistance of counsel, petitioners filed a formal motion to change venue on September 15, 2003, spelling out the hardship posed to them by the hearing in Detroit and the lack of good reason to conduct the hearing there. The motion was denied on October 9, 2003 by a visiting immigration judge, as IJ Hacker was on medical leave. The visiting IJ denied the motion because the government opposed it and because IJ Hacker had denied the earlier letter request for change of venue.

Petitioners then filed a renewed motion for change of venue on October 15, 2003. At that point, their hearing was set for October 28. Petitioners' counsel made several phone calls to make sure the latest motion was addressed in time for petitioners to make travel arrangements if necessary. However, IJ Hacker was not available to address the motion and the visiting IJ refused "to get in the

middle of it."  On October 24, petitioners faxed a motion for continuance of the master calendar hearing, so as to afford IJ Hacker a fair opportunity to consider their renewed motion for change of venue.

Neither motion was addressed before the October 28 hearing.  Petitioners did not appear at the hearing.  In their absence, IJ Hacker denied the motion for continuance, denied the renewed motion for change of venue, and ordered petitioners removed to Iran.  The orders of removal are one-page form orders.  They indicate that the INS submitted documentary evidence establishing the truth of the allegations of removability, and that petitioners' failure to appear at the hearing constituted their abandonment of any defense to the allegations.

Petitioners timely moved to reopen proceedings and rescind the *in absentia* orders of removal.  Finding that petitioners had failed to show their non-appearance was due to "exceptional circumstances" beyond their control, IJ Hacker denied the motion to reopen on February 2, 2004. The BIA summarily affirmed, rendering IJ Hacker's decision the final decision of the agency. Petitioners now contend that IJ Hacker abused her discretion by failing to consider the totality of the circumstances. Petitioners also contend their due process rights were violated in that they were denied a fair hearing on the removal charges and were denied their right to counsel of their choice, who was in California.

## II

The applicable standard of review is set forth in *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003):

> The denial of a motion to reopen or reconsider a removal order is reviewed for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 324 (1992). An abuse of discretion can be shown when the IJ or Board offers no "rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). When the BIA adopts the reasoning of the IJ, we review the IJ's decision to determine whether the BIA abused its discretion.

This scope of review is "exceedingly narrow," but the BIA's decision may be reversed if it failed to consider all relevant facts and circumstances. *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). Such a decision would be arbitrary or capricious. *Id*.

Petitioners' right to relief from the IJ, in the form of reopening the removal proceeding and rescission of the removal orders, was fundamentally dependent on their ability to show that their failure to appear was caused by "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C). "Exceptional circumstances" is defined as "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. §1229a(e)(1). The totality of the circumstances must be considered in determining whether exceptional circumstances exist. *Denko*, 351 F.3d at 723.

Further, our review of the IJ's refusal to grant relief from the *in absentia* removal orders is "confined to (*i*) the validity of the notice provided to the alien, (*ii*) the reasons for the alien's not attending the proceeding, and (*iii*) whether or not the alien is removable." 8 U.S.C. § 1229a(b)(5)(D). These are the three factors we scrutinize in determining whether IJ Hacker abused her discretion.

**III**

A. *Validity of Notice*

As to the first factor, there is no dispute about the validity and adequacy of the notice of hearing provided to petitioners. They received ample advance notice of the date, time and place of the hearing in Detroit, including notice that the consequences of their failure to appear could include issuance of *in absentia* orders of removal.

B. *Reasons for Non-Appearance*

As to the second factor, the IJ concluded that petitioners' reasons for their non-appearance at the hearing did not amount to "exceptional circumstances beyond their control," but were a matter of "choice." Petitioners contend this conclusion and the summary analysis accompanying it demonstrate that the IJ abused her discretion by failing to consider all relevant facts and circumstances. They insist IJ Hacker should have reached a different conclusion if she had fairly considered (1) the obvious and unrefuted merits of their renewed motion for change of venue; (2) the extent to which disarray in the Detroit office (resulting from IJ Hacker's medical leave of absence and the limited availability of visiting judges) contributed to petitioners' failure to timely make necessary travel arrangements; and (3) petitioners' diligent efforts to obtain a reasoned ruling on their motion for change of venue.

All of these facts and circumstances do militate in favor of a sympathetic response to the motion to reopen. Yet, none of them undermines the correctness of the determination that petitioners had the ability to attend the hearing in Detroit on October 28, 2003. Traveling from California to Detroit for purposes of a calendar hearing was undeniably inconvenient and even

impractical, but petitioners have never contended they were physically or financially unable to make the trip. For obvious and arguably reasonable reasons, they did not want to make the trip. They therefore made repeated requests for a change of venue. The first two requests were denied and the third was pending when the scheduled hearing date arrived. Although petitioners remained hopeful of a favorable response until the last moment, they had been given no reason to expect their third motion would be treated any differently than the first two. Their decision to forgo making the necessary travel arrangements based on such unsubstantiated hopes was a risky gamble that turned out to be a gross miscalculation.

While we might prefer that IJ Hacker had exercised her discretion to grant the motion to reopen, we cannot say, considering the decidedly narrow definition of "exceptional circumstances" prescribed by Congress, that she erred in concluding that petitioners were not prevented from attending the hearing by reasons beyond their control.

## C. *Petitioners' Removability*

The third factor for our consideration in evaluating IJ Hacker's decision is whether petitioners are removable. An alien who, after having been provided valid notice, fails to appear for a hearing "shall be ordered removed *in absentia* if the Service establishes by clear, unequivocal, and convincing evidence that the alien is removable." 8 U.S.C. § 1229a(b)(5)(A). The IJ's removability determination "shall be based only on the evidence produced at the hearing." 8 U.S.C. § 1229a(c)(1)(A).

The form orders of removal issued by IJ Hacker indicate that she found petitioners' removability was established based on documentary evidence submitted by the INS at the October

28, 2003 hearing.[1] Further, IJ Hacker construed petitioners' non-appearance at the hearing as abandonment of any relief from removal for which they might have been eligible.

The fundamental question posed by the allegations of removability was whether petitioners abandoned their lawful permanent resident status when they traveled to Iran for over three years, from early 1999 to July 2002. As lawful permanent residents, petitioners were admissible to the United States if they were returning from a "temporary visit abroad." 8 U.S.C. § 1101(a)(27)(A). "A trip is for a 'temporary visit abroad' if (a) it is for a relatively short period, fixed by some early event; or (b) the trip will terminate upon the occurrence of an event that has a reasonable possibility of occurring within a relatively short period of time." *Hana v. Gonzales*, 400 F.3d 472, 476 (6th Cir. 2005) (quoting *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997)). If as in (b), above, "the length of the visit is contingent upon the occurrence of an event and is not fixed in time and if the event does not occur within a relatively short period of time, the visit will be considered a temporary visit abroad only if the alien has a continuous, uninterrupted intention to return to the United States during the entirety of his visit." *Katebi v. Ashcroft*, 396 F.3d 463, 466 (1st Cir. 2005) (quoting *Chavez-Ramirez v. INS*, 792 F.2d 932, 936-37 (9th Cir. 1986)). Ultimately, the issue is one of intent – whether petitioners had a continuous, uninterrupted intention to return to the United States within a relatively short period of time throughout the visit abroad. *Id.*

---

[1]The removal order pertaining to Sara Dehbozorgi, unlike that pertaining to Effat Modarresi, lacks a check mark next to the relevant language in the form order. This technical failing of the order is of no consequence as the substantive meaning and effect of the order is clear and has never been disputed.

While the evidence referred to in the removal orders is not specifically identified, there is no question that IJ Hacker relied on the 9-page "Record of Sworn Statement" made by Immigration Inspector Stanley Parker when petitioners first arrived in Detroit on July 6, 2002. According to this record, in July 2002, both petitioners claimed Iran as their country of permanent residence, both disclaimed a permanent residence in the United States, and both claimed the intention to visit family in the United States and leave within three months. Petitioners have stipulated to the accuracy of these recorded statements. The statements are hardly complete statements of petitioners' intentions while they were abroad in Iran or on their return to the United States, but they are undeniably inconsistent with their now professed intention of continuously maintaining a permanent residence in the United States. They offer no support for a finding that petitioners, throughout their three-year visit to Iran, maintained a continuous, uninterrupted intention of returning to the United States within a relatively short period of time. Moreover, petitioner Modarresi's own sworn-statement summary of her regular comings and goings between Iran and the United States since she obtained permanent resident status in late 1993 indicates that prior to her return in July 2002, she spent 78 out of 104 months in Iran and only 26 in the United States. These facts, too, weigh decidedly against a finding of intention to maintain permanent residence in the United States.

Considering petitioners' sworn statements in light of the above substantive standards, they are anything but supportive of petitioners' defense to the removability allegations. Yet, though the sworn statements appear to have been the entirety of the evidence produced at the hearing, petitioners have not tried to explain or clarify their statements in any way. Rather, they have stipulated to the accuracy of the statements. Even upon moving for reopening of the case, neither

petitioner filed a clarifying declaration or affidavit or otherwise presented any evidence of her personal intentions during the three-year trip to Iran.

To now make their claim that they continuously intended to maintain a permanent residence in the United States, petitioners rely on the declaration of Effat Modarresi's brother and Sara's uncle, Azim Modarresi. The declaration was initially submitted in support of petitioners' renewed motion for change of venue in October 2003 and was *arguably* before IJ Hacker at the time of the October 28 hearing, although it is far from clear that she considered it. The declaration attests to the extended family's history of immigration to and settling in California. It is generally supportive of a finding that petitioners wish to stay in the United States. Only a couple of sentences of the five-page declaration, however, bear directly on the purpose of petitioners' three-year trip to Iran and their intentions while they were abroad:

> Briefly, it was a dispute over property that my sister owns in Iran that she wanted to sell so she could bring the proceeds to California to buy her own house for herself and her two unmarried children so she would not have to live with her son and his family. My sister had to take her daughter, Sara, with her to Iran because she was a minor.

Azim Modarresi dec. ¶¶ 9-10.

This vague statement of petitioners' intentions by a family member, uncorroborated by affidavits or declarations of petitioners themselves, is ineffective to refute petitioners' own sworn and subsequently affirmed statements to the contrary. Even assuming the declaration could be deemed to have been properly produced at the October 28 hearing, despite petitioners' non-appearance, it could offer petitioners little aid in defense of the removal allegations.

Accordingly, based on the record presented, we find no error in IJ Hacker's determination that petitioners were shown to be removable by clear, unequivocal and convincing evidence. It follows that all three review factors prescribed by 8 U.S.C. § 1229a(b)(5)(D) weigh against a finding that IJ Hacker abused her discretion in denying the motion to reopen and denying relief from the *in absentia* removal orders.

**IV**

Petitioners also contend the proceedings leading up to issuance of the removal orders violated their rights to procedural due process. Specifically, they contend they were denied a meaningful opportunity to be heard and were denied their right to counsel of their choice, rights specifically conferred by 28 U.S.C. § 1229a(b)(4). However, a violation of due process occurs only when "the proceeding was so fundamentally unfair that the alien was *prevented* from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (6th Cir. 2000))(emphasis added). Allegations of due process violations are reviewed *de novo*. *Id.*

For the reasons fully discussed above, we do not find that petitioners were *prevented* from exercising their right to representation by counsel of their choice or their right to present their case. They received valid notice of the hearing on October 28, 2003. They retained counsel of their choosing. Neither they nor their counsel have argued that they were *unable* to attend the scheduled hearing. They *hoped* to the very end, without warrant, that their third request for change of venue would receive a more favorable response than their first two requests. When their hopes were disappointed, the hearing proceeded as scheduled and they failed to appear. Their non-appearance

was not due to "exceptional circumstances." In their absence, IJ Hacker considered the removal

allegations on the record presented and finding petitioners removable, ordered them removed, in

accordance with 8 U.S.C. § 1229a(b)(5)(A). Petitioners' motion to reopen was timely considered

and denied and we have found that IJ Hacker did not abuse her discretion. There is no due process

violation.

## V

In failing to appear at the October 28, 2003 hearing, petitioners made a gross miscalculation.

The consequences flowing from their error are serious and unfortunate. For the reasons set forth

above, however, under the scheme established by Congress, we find no error in the final decision

of the BIA. Petitioners' petition for review is therefore **DENIED.**