NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0229n.06

No. 15-3345

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 28, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NATIVIDAD MATIAS MENDOZA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: KETHLEDGE and WHITE, Circuit Judges; and COHN, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**

Natividad Matias Mendoza seeks review of the Board of Immigration Appeals' ("BIA")

order dismissing her appeal from the immigration judge's ("IJ") denial of her motion to reopen.

Because the BIA's rationale for finding that Mendoza was not diligent in pursuing relief from

her in-absentia removal order is not supported by the record, we **GRANT** the petition in part and

**REMAND** to the BIA for further proceedings. We otherwise **DENY** the petition for review.

**I.**

Mendoza is a citizen of Guatemala and the mother of three United States children. She

entered the United States in 1998 and filed an asylum application in February 2003. Shortly

thereafter, the Department of Homeland Security ("DHS") charged her with removal for being

present in the United States without admission or parole. The IJ set a hearing for April 2, 2004,

---

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

in Detroit. Eleven days before the hearing, Mendoza filed a motion to change venue to Chicago, which was closer to her residence in Grand Island, Nebraska. The IJ denied the motion as untimely. Neither Mendoza nor her counsel appeared at the April 2 hearing, and the IJ ordered Mendoza removed in absentia.

In November 2012, Mendoza moved to reopen the proceedings. Mendoza submitted a declaration stating that her family moved to Nebraska in March 2004 and that her husband's boss offered to put them in touch with an attorney who would help them. Mendoza was then introduced to an attorney, Bart Chavez, who looked at her documents and told her that he would take care of transferring her immigration case to Nebraska in exchange for a $3000 retainer. Chavez advised Mendoza not to attend the April 2004 hearing, and in subsequent conversations told Mendoza to be patient, not to worry, and to pay his legal fees, which she paid off in January 2005. After April 2005, Chavez generally stopped taking or returning Mendoza's calls, but when they did speak, including in April 2006 and December 2011, Chavez reiterated that he was handling Mendoza's case and that she needed to be patient. In March 2012, Mendoza moved to Oakland, California, and hired a new attorney ("second counsel"). Second counsel discovered the removal order and that Chavez had been disbarred, and brought Mendoza's first motion to reopen.

The IJ denied the motion to reopen, finding that Mendoza had not exercised due diligence in pursuing her claims because she failed to inquire about her case between 2006 and 2011 and delayed eight months in filing her motion to reopen after hiring second counsel (from March – November 2012). Mendoza did not appeal; she claims that second counsel did not inform her that she could appeal the denial of her motion to reopen, and simply told her that he could not help her further.

Mendoza subsequently retained current counsel, who, in March 2013, filed a second motion to reopen along with an I-589 petition for asylum and withholding of removal. In her motion to reopen, Mendoza argued, among other things, that Chavez's and second counsel's ineffectiveness constituted exceptional circumstances, and that she had evidence of new, material country conditions to support her asylum claim. Mendoza submitted another declaration, clarifying that she had not sought new representation in Oakland until May 2012, and that it was not until "several months after hiring" second counsel that she learned of the April 2004 order of removal.[1] (AR 294.)

In addition, her declaration stated that she was born in 1982 in Todos Santos, Guatemala. A military massacre occurred in March 1982 that resulted in her mother being beaten and sexually assaulted by military forces. Prior to the massacre, her father disappeared, possibly to join the guerilla forces fighting the military. When she was ten years old, her mother's live-in boyfriend, who routinely beat her, attempted to sexually abuse her on multiple occasions. One night in August 1992, the Civil Patrol came to Mendoza's house, accused her of being a "child of the guerilla," and kidnapped her mother for two days. (AR 291.) The Civil Patrol also told Mendoza that if she ever left and tried to return to Todos Santos, she would be taken away forever. Later in 1992, Mendoza left Todos Santos for Mexico and stayed for six years. In 1998, she entered the United States because coworkers were discriminating against her and threatening her with sexual abuse.

---

[1] In the previous paragraph of her declaration, Mendoza states that "[i]t wasn't until another attorney looked into the status of the case at a free legal clinic in Oakland, California in approximately May 2012 that I realized the transfer had been denied, and that I had an order of removal." (AR 294.) Mendoza explained in a brief before the BIA that after learning through the clinic that there had been a removal order, Mendoza was referred to second counsel, who gathered her records and moved to reopen her case.

Mendoza also submitted a February 4, 2013, report by Michael Smith about "La Seguridad." According to Smith, La Seguridad is a paramilitary organization that operates as the local security committee in Todos Santos, Guatemala, in cooperation with the national police. It evolved in 2000 from the Civil Patrol, which was organized and directed by the military to repress the population in indigenous areas, under the guise of preventing guerillas from entering the indigenous communities. In 2007, La Seguridad made it mandatory for each household to supply one person to patrol approximately twice per month or pay a fee; those who refused were punished. La Seguridad has beaten outsiders and detained them in jail. It has also sexually assaulted indigenous women. In her asylum application, Mendoza alleged that La Seguridad detained, beat, and interrogated her husband in 2007 for being a guerilla sympathizer, and that the Civil Patrol had done the same thing to him in 1992. La Seguridad also threatened Mendoza's husband with death if he returned.

Additionally, Mendoza submitted a newspaper article dated May 20, 2013, reporting that Guatemala's high court overturned former dictator Efrain Rios Montt's genocide conviction and ordered that trial be reset. According to the article, Rios Montt's government launched a brutal offensive against Maya villagers, raping, torturing, and killing those suspected of helping Marxist rebels. The article noted that it was unclear when the trial might restart.

The IJ denied Mendoza's second motion to reopen. The BIA dismissed Mendoza's appeal, finding that her motion was time- and number-barred because she failed to show a material change in country conditions or prima facie asylum eligibility. The BIA also concluded that Mendoza failed to show due diligence in moving to reopen her in-absentia removal order, and thus she was not entitled to equitable tolling. (AR 5.) Mendoza filed a timely petition for review.

## II.

Where, as here, the BIA issues its own decision, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Because the BIA has "broad discretion" to grant or deny a motion to reopen, we review the denial of a motion to reopen under the abuse-of-discretion standard. *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992) (internal quotation marks and citation omitted); *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). The BIA abuses its discretion when it fails to provide a rational explanation, inexplicably departs from established policies, or rests its decision on an impermissible basis such as invidious discrimination. *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). Under this standard, factual findings are reviewed for substantial evidence and will not be overturned "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili*, 557 F.3d at 435 (internal quotation marks and citation omitted).

## A.

Mendoza first argues that the BIA abused its discretion in determining that her proffered evidence of changed country conditions was insufficient to warrant reopening her proceedings. This argument is governed by 8 U.S.C. § 1229a(c)(7)(C), which generally provides a 90-day time limit to file a motion to reopen after entry of a final administrative order of removal. However, the time limitation is waived if the motion is based on "changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.23(b)(4)(i). "In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, [the BIA] compare[s] the evidence of country conditions submitted with

the motion to those that existed at the time of the merits hearing below." *Bi Feng Liu v. Holder*, 560 F.3d 485, 491 (6th Cir. 2009) (alterations in original) (quoting *Matter of S-Y-G*, 24 I. & N. Dec. 247, 253 (B.I.A. 2007)).

The BIA reasonably determined that Mendoza did not meet her burden. The article Mendoza primarily relies upon establishes that La Seguridad has been operating since 2000, prior to Mendoza's April 2004 hearing. Moreover, the author of the article acknowledges that most of the information he presents simply confirms what he had previously heard about La Seguridad. The only post-2004 change that the article cites occurred in 2007, when it became obligatory for each household to supply one patroller or pay a fee to La Seguridad, but Mendoza does not show why this change is material to her claim that she will face persecution based on her particular social group or political opinion. In her asylum application, Mendoza asserts that her husband returned to Guatemala in 2007 and was beaten by members of La Seguridad, just as members of La Seguridad's predecessor had beaten him in 1992; this does not support a change in country conditions. Finally, the news article regarding the trial of a former dictator does not support a finding of materially changed country conditions. Although Mendoza argues that the former dictator's trial being reset "places Guatemala's indigenous population under new threat from established elites," nothing in the record supports her assertion. (Pet'r's Br. 20-21.) Accordingly, the BIA did not abuse its discretion in determining that Mendoza failed to establish a material change in country conditions with previously unavailable, material evidence.[2]

Because Mendoza failed to establish a material change in country conditions, we need not address her alternative argument that she established prima facie eligibility for relief. *See Zhang*

---

[2] Mendoza also makes reference in her brief to other materials, including country reports, that were not made part of the administrative record. Accordingly, we may not consider this evidence. *See Porras v. Holder*, 572 F. App'x 436, 438 (6th Cir. 2014) (quoting *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009)).

*v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008) (describing the failure to offer previously unavailable, material evidence as an "independent ground[]" for denial of a motion to reopen (quoting *Doherty*, 502 U.S. at 323)); *Chen v. Holder*, 397 F. App'x 111, 119 (6th Cir. 2010) ("Chen also argues that the BIA abused its discretion in holding that she failed to make a prima facie case of eligibility for asylum. However, we need not address this argument, as the BIA properly denied Chen's motion based on her failure to show materially changed country conditions.").

**B.**

An alien who does not attend a proceeding after written notice has been provided to the alien or the alien's counsel of record shall be ordered removed in absentia if the DHS establishes that notice was provided and the alien is removable. 8 U.S.C. § 1229a(b)(5)(A). An in-absentia removal order may be rescinded upon a motion to reopen filed within 180 days after the date of the in-absentia order if the failure to appear was because of exceptional circumstances. 8 U.S.C. § 1229a(b)(5)(C)(i). Although it is undisputed that Mendoza filed her motion well beyond the 180-day period, Mendoza argues that the BIA abused its discretion in finding that she was not entitled to equitable tolling due to a lack of diligence in seeking relief. The DHS appears to concede that this deadline is subject to equitable tolling, and this court has also recognized that an alien who is prejudiced by ineffective assistance of counsel may be entitled to equitable tolling of a deadline for filing a motion to reopen. *See Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010).

In determining whether equitable tolling is applicable to an otherwise time-barred motion, we generally consider the following factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement;

(3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* (internal quotation marks omitted) (quoting *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008)). The BIA did not address any factor except Mendoza's diligence in pursuing her rights, nor does the DHS do so on appeal. Rather, the DHS argues, as the BIA found, that equitable tolling is inappropriate because Mendoza failed to establish diligence. *See id.* ("In past cases, we have declined to equitably toll the time period for filing motions to reopen . . . where the petitioner failed to exercise diligence in pursuing his rights." (citations omitted)).

When analyzing diligence where ineffective assistance of counsel is alleged, this court looks to the petitioner's actions during the periods before and after the alleged ineffectiveness was discovered. *See id.* at 621. For the pre-discovery period, we have recognized that "[t]here is some authority suggesting that [the petitioner] was obligated to make reasonable inquiries regarding the status of her [case]." *Gordillo v. Holder*, 640 F.3d 700, 706 (6th Cir. 2011). But, we and other circuits have also recognized that aliens who are not well-versed in United States immigration law can easily be led astray by fraudulent assurances from unscrupulous counsel. *See Mezo*, 615 F.3d at 621 ("Given the evidence that [the petitioner] hired an attorney and was lied to by that attorney, combined with her lack of understanding of our Byzantine immigration laws, the likely cause of her delay in moving to reopen was not a lack of due diligence."); *Iturribarria v. I.N.S.*, 321 F.3d 889, 899 (9th Cir. 2003) ("The INS' suggestion that petitioners, who were in an extremely vulnerable position as the subjects of pending deportation proceedings, should be considered to have lost their rights because they were beguiled by [a representative's] assurances, contradicts the very basis for providing equitable relief. Petitioners were unfamiliar with the INS' administrative process and relied on [their representative] to

protect their interests." (alterations in original) (quoting *Rodriguez-Lariz v. I.N.S.*, 282 F.3d 1218, 1225 (9th Cir. 2002))). The focus for both periods is not the mere passage of time or whether the petitioner exercised maximum diligence, but rather, under the totality of the circumstances, whether the petitioner was reasonably diligent in discovering the attorney's ineffectiveness and then acting to seek relief.[3] *See Gordillo*, 640 F.3d at 705; *Mezo*, 615 F.3d at 621.

Here, the BIA concluded that Mendoza was not diligent before or after she learned of Chavez's alleged ineffectiveness. But the BIA's reasons for concluding that Mendoza failed to establish diligence are not supported by the record. In particular, the BIA found that Mendoza "took no action" to inquire about her immigration status from April 2006 – December 2011. (AR 5.) The BIA also found that "despite apparently learning of the in absentia removal order for the first time in March 2012, she 'did not act on her motion to reopen for nearly eight months.'" (AR 5 (quoting IJ's Order at 7 (Nov. 29, 2012)).) Based on these findings, the BIA concluded that "equitable tolling of the time limit was unwarranted as [Mendoza's] claims of due diligence are not supported by the record." (AR 6.)

Both BIA findings are inconsistent with Mendoza's declarations, which are the only record evidence about this issue, and which the DHS does not challenge as inconsistent or

---

[3] For the post-discovery period, although passage of time is not the only factor to be considered, this court has often referenced the statutory time period to file a motion to reopen in analyzing whether a petitioner acted diligently. *See Barry*, 524 F.3d at 725 (explaining that the petitioner's claim of diligence was "further undercut[]" because she waited to file her motion to reopen for longer than the applicable 90-day time period after learning of the need to file her motion); *Scorteanu v. I.N.S.*, 339 F.3d 407, 414 (6th Cir. 2003) (finding a lack of diligence where, "even after having received actual notice [of the removal order] and having retained different counsel, [the petitioner] exceeded the statutory time limit . . . to file his motion to reopen"). A motion to reopen seeking rescission of an in-absentia removal order due to exceptional circumstances must be brought within 180 days. 8 U.S.C. § 1229a(b)(5)(C)(i).

unreliable.[4]  In particular, Mendoza's November 1, 2012, declaration states that Chavez assured her he would get her case transferred to Nebraska and that he had taken care of everything.  After April 2006, she continued to call Chavez.  Chavez rarely answered or returned her calls, but when they did speak several times during that period, including in December 2011, Chavez continued to tell Mendoza that her case was taken care of and to be patient.  Further, although her November 2012 declaration states that she moved to Oakland in March 2012, Mendoza did not state that she hired an attorney then, or that she learned of the removal order in March.  Rather, she asserted that she had "just recently" learned of the removal order and the denial of her change-of-venue request.  (AR 366.)  She clarified in a subsequent declaration that she did not hire her second attorney until May 22, 2012.  She filed her first motion to reopen on November 12, 2012, within 180 days of May 22, 2012.

Although the BIA may reach the same conclusion based on the facts as they are stated in Mendoza's declarations, or find that Mendoza failed to establish exceptional circumstances or entitlement to equitable tolling for a different reason, our review is limited to the BIA's articulated rationale for its decision.  *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004) ("[T]he Board's denial of relief may be affirmed only on the basis articulated in the decision and this Court may not assume that the Board considered factors that it failed to mention in its opinion.").  Because the BIA's stated reasons for finding that Mendoza was not diligent in seeking relief are not supported by the record, the BIA's decision is without a rational explanation and must be remanded.  *See Uwineza v. Holder*, 781 F.3d 797, 799 (6th Cir. 2015) (per curiam) (holding that the BIA's denial of motion to reopen was made without a rational

---

[4] The BIA cites Mendoza's first declaration in its decision, which itself is inconsistent with the BIA's finding of no reasonable diligence.  The BIA never cites or addresses the additional facts in Mendoza's second declaration about her interactions with Chavez or her learning of the removal order.  Thus, it is unclear whether the BIA even considered her second declaration, or whether it considered and chose to disregard it.

explanation where the reasons given were invalid); *Kebe v. Gonzales*, 473 F.3d 855, 857 (7th Cir. 2007) ("Although the BIA might have offered reasons for rejecting the evidence . . . , or for denying relief despite [this evidence], the absence of any articulated reasons in the BIA's decision constitutes an abuse of discretion and requires a remand."); *Modarresi v. Gonzales*, 168 F. App'x 80, 82 (6th Cir. 2006) ("[T]he BIA's decision may be reversed if it failed to consider all relevant facts and circumstances."  (citing *Daneshvar*, 355 F.3d at 626)).

## III.

For these reasons, we **GRANT** the petition in part and **REMAND** to the BIA for further proceedings consistent with this opinion, and otherwise **DENY** the petition for review.