NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0535n.06

Case No. 20-3236

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>RANI L. KARIM,<br><br>    Petitioner<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>    Respondent</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS</td></tr>
</table>

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Rani Karim is a Christian and an Iraqi citizen. He alleges that he faces the threat of religious persecution if removed to Iraq. An immigration judge agreed and granted Karim's request for withholding of removal, which generally ensures that Karim will not be returned to Iraq as long as Christians are persecuted in that country. But Karim prefers another form of relief—asylum—because it confers additional benefits like the ability to travel outside the United States and apply for permanent residency. The judge, however, denied asylum due to Karim's credibility issues. On four occasions, Karim has asked the Board of Immigration Appeals to reverse that denial. And on each occasion, the Board refused. Seeing no abuse of discretion in the Board's latest determination, we deny the petition.

**BACKGROUND**

Rani Karim was born in Iraq and remained there for over two decades. In September 2002, Karim traveled to Jordan, where he met a woman from the United States. Days later, the couple became engaged. Karim's fiancée returned to the United States and secured a visa on Karim's behalf. On the authority of that visa, Karim entered the United States in 2003. But his impending marriage quickly fell through, and Karim overstayed his visa. He was ordered removed to Iraq but promptly filed an application for asylum, 8 U.S.C. § 1158, withholding of removal, *id*. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. § 208.16(c).

In his application, Karim claimed that, due to his Christian faith, he would face persecution at the hands of Muslims were he returned to Iraq. The asylum officer who conducted Karim's initial interview found that Karim "presented testimony that was believable, consistent and sufficiently detailed. Therefore, he was found to be credible." But the officer concluded that, because the incidents described by Karim did not rise to the level of persecution, he failed to demonstrate either that "anyone [in Iraq] is inclined to harm him on account of his religion" or that the threat of persecution existed countrywide. So the officer found Karim ineligible for asylum and referred his case to an Immigration Judge (IJ). At his hearing before the IJ, Karim testified that he had been beaten, arrested, detained, and threatened with death while living in Iraq, all on account of his faith. The IJ, however, determined that Karim's application and testimony were inconsistent in critical ways. One, Karim's application claimed that he convalesced at home for ten days after being beaten by Muslims, yet he testified that his injuries were so severe he needed to recover at home for a month. Two, Karim's application stated that in August 2004, Shia Muslims had burned his family home and tried to kill his parents, yet he testified that his father's last contact with Muslims was in February 2003. Three, during his interview with an asylum

officer, Karim reported that he had been arrested with a friend in July 2002 and jailed for a month, yet he later admitted that the incident never happened. And four, Karim admitted that two documents he submitted with his application—a baptismal certificate and a certification regarding his marital status—had been postdated to help secure the fiancé visa that granted him entry to the United States.

Noting the "troubling" inconsistencies and falsehoods regarding "key aspects" of Karim's application, the IJ made an adverse credibility finding against Karim. And because Karim's testimony and application were not credible, the IJ concluded that he was unable to satisfy the threshold requirements for asylum, withholding of removal, or protection under the Convention Against Torture. Accordingly, the IJ denied all three forms of relief. Karim appealed to the Board of Immigration Appeals, which remanded the case to the IJ with instructions to re-evaluate Karim's application in light of recent reports by and to the Department of State on the treatment of Christians in Iraq.

On remand, the IJ found that the intervening reports, coupled with additional testimony about Karim's faith, established that Karim was a Christian and, further, that Christians were subject to persecution in Iraq. On those grounds, the IJ granted Karim's request for withholding of removal in accordance with § 241 of the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1231(b)(3)(A). But Karim did not fare as well in his request for asylum. Unlike before, the IJ determined that Karim satisfied the statutory requirements for asylum. *See* 8 U.S.C. § 1101(a)(42)(A). Nonetheless, the IJ, characterizing Karim's "significant credibility problems" as "a serious adverse factor militating against a favorable exercise of discretion," again found Karim not credible and, on that basis, denied him asylum, this time as a matter of discretion.

3

Finally, in light of her decision granting Karim's request for withholding of removal, the IJ denied as moot Karim's request for protection under the Convention Against Torture.

Karim again appealed to the Board, which dismissed the appeal. He subsequently filed three motions to reopen his asylum claim. Already protected by the order withholding his removal, Karim nonetheless desired the additional benefits conferred by asylum. He asserted an entitlement to reopening his asylum claim both because new evidence showed worsening conditions for Christians in Iraq and because the IJ abused her discretion in denying him asylum. Each time, the Board denied his motion. Karim's new evidence of worsening conditions in Iraq, the Board explained, was immaterial to the reason he was denied asylum—the adverse credibility determination. And the IJ's discretionary denial of asylum due to Karim's credibility issues was "supported by specific, cogent reasons [going] to the heart of" Karim's claim, and thus was "not clearly erroneous."

## ANALYSIS

Before us is Karim's petition for review of the Board's decision denying his third motion to reopen his asylum proceeding. In his initial proceeding, Karim sought asylum under the INA, which, in relevant part, authorizes an IJ to grant asylum to any noncitizen who has suffered persecution or faces a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1101(a)(42)(A) & 1158. An IJ resolving an asylum claim engages in a two-step inquiry. *Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). Step one is determining whether the applicant is a "refugee" eligible for asylum as defined by § 101 of the INA, which requires past persecution or a "well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A). Step two is determining "whether the applicant merits a favorable exercise of discretion." *Ben Hamida*,

478 F.3d at 736 (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)). Each step can be dispositive. Asylum may be denied if the record reveals factors that weigh against a favorable exercise of discretion, even if the applicant is otherwise eligible. *Kouljinski v. Keisler*, 505 F.3d 534, 542 (6th Cir. 2007) (noting that an IJ may deny asylum due to "egregious adverse factors" (citation omitted)); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1965 n.4 (2020) ("[E]ven if an applicant qualifies, an actual grant of asylum is discretionary."). Employing this two-step inquiry, the IJ first found that Karim met the statutory requirements for asylum. But the IJ ultimately denied Karim asylum because his credibility issues were "a serious adverse factor militating against a favorable exercise of discretion."

Karim now challenges the Board's refusal to reopen that proceeding. Although § 240(c)(7) of the INA affords a noncitizen the opportunity to seek reopening in certain circumstances, 8 U.S.C. § 1229a(c)(7), "motions to reopen are disfavored," *INS v. Abudu*, 485 U.S. 94, 107 (1988). For that reason, and because the Board has "broad discretion to grant or deny such motions," an applicant seeking reopening "bears a heavy burden." *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (quotation marks omitted). We review the Board's denial for abuse of discretion, meaning that we will uphold the Board's determination unless it was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Lopez v. Garland*, 990 F.3d 1000, 1002 (6th Cir. 2021) (quoting *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015)).

A. We begin with a threshold procedural issue. A motion to reopen asylum proceedings generally must be filed no later than 90 days after an IJ's final decision. 8 U.S.C. § 1229a(c)(7)(C)(i). And customarily, a party may seek reopening only once. *Id.*

5

§ 1229a(c)(7)(A). Acknowledging that his current effort to reopen does not satisfy these statutory criteria, Karim argues that his motion should nonetheless be deemed timely due to his reliance on previously unavailable evidence of deteriorating conditions in Iraq. True, as Karim emphasizes, these limitations on motions to reopen do not apply when the motion relies on evidence of "changed country conditions" where "such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). But it is difficult to see how Karim's evidence is "material" to his prior denial of asylum. After all, his new evidence regarding the persecution of Iraq's Christian population goes only to a point already decided in Karim's favor: that he would face religious persecution if removed to Iraq. In other words, Karim's new evidence would support only the first step of the asylum inquiry—statutory eligibility. *See* 8 U.S.C. § 1101(a)(42)(A) (requiring "persecution or a well-founded fear of persecution"). But it does nothing to undermine the IJ's adverse credibility finding or her eventual decision to deny Karim asylum as a matter of discretion. *See Bushati v. Holder*, 458 F. App'x 457, 461 (6th Cir. 2012) (explaining that new evidence is not "material" if a party still faces an "initial adverse credibility ruling and the outcome of the proceedings is unlikely to change"). Accordingly, the Board did not abuse its discretion by denying Karim's motion on both timing and frequency grounds under § 240(c)(7) of the INA. *See Yousif v. Holder*, 482 F. App'x 987, 988 (6th Cir. 2012) (per curiam) ("[T]he BIA properly concluded that evidence of worsening conditions for Christians in Iraq was not material where the IJ had" denied asylum on separate grounds.).

B. Alternatively, Karim contends that reopening is appropriate because the IJ's initial adverse credibility finding was factually and legally erroneous, meaning the finding cannot serve as the basis for a discretionary denial of asylum. *See Marouf v. Lynch*, 811 F.3d 174, 189–90 (6th

Cir. 2016) (holding that "[d]iscretionary denials of asylum to otherwise-eligible applicants" are an abuse of discretion when based on erroneous credibility determinations). This argument, however, runs into numerous roadblocks.

One is now quite familiar: § 240(c)(7) of the INA. While reopening may be appropriate when a noncitizen produces previously unavailable material evidence in support of his position, Karim merely repeats arguments (which the Board previously considered and rejected in Karim's second appeal to the Board) that the inconsistencies in his testimony were immaterial to his asylum claim. And two, even assuming that jurisdiction exists (a point over which the parties disagree), the IJ's finding is supported by substantial evidence. An IJ's credibility determinations are factual findings, *Ben Hamida*, 478 F.3d at 736, and, as such, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Here, the IJ identified multiple inconsistencies in Karim's application and testimony, each of which related to key aspects of his claim for asylum. Where, as here, the IJ both gave "numerous grounds for [an] adverse credibility finding," *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004), and based her credibility determination on the "cumulative effect" of many smaller inconsistencies, *id.* at 704, we see no reason to disturb the IJ's finding. *See* 8 U.S.C. § 1252(b)(4)(B); *see also Berri v. Gonzales*, 468 F.3d 390, 395–96 (6th Cir. 2006) (denying petition due to inconsistent accounts of events, such as whether applicant was arrested or beaten); *Bah v. Gonzales*, 462 F.3d 637, 640–42 (6th Cir. 2006) (denying petition due to inconsistencies regarding, among other things, when applicant and family members were arrested).

C. One final point deserves mention. "The Supreme Court has identified 'at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material

evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought.'" *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249 (6th Cir. 2018) (quoting *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008)). Here, again, the Board denied Karim's motion to reopen on two grounds: first, even with his new evidence, Karim did not show that a different outcome was warranted with respect to the adverse credibility determination or the denial of asylum based on that determination; and second, because he had already been granted withholding of removal, Karim could not show that he was entitled to a favorable exercise of discretion on his asylum request. Because these were independent grounds for denial and Karim's evidence of changed country conditions did not undermine those two grounds, Karim has not demonstrated that he is entitled to relief. *See Mendoza v. Lynch*, 646 F. App'x 458, 462 (6th Cir. 2016) ("Because Mendoza failed to establish a material change in country conditions, we need not address her alternative argument that she established prima facie eligibility for relief."); *Chen v. Holder*, 397 F. App'x 111, 119 (6th Cir. 2010) ("Chen also argues that the BIA abused its discretion in holding that she failed to make a prima facie case of eligibility for asylum. However, we need not address this argument, as the BIA properly denied Chen's motion [to reopen] based on her failure to show materially changed country conditions."). For these reasons, we deny the petition for review.

*     *     *     *     *

While Karim is not entitled to asylum, we would be remiss in failing to reiterate that the IJ did grant Karim's request for withholding of removal. Unlike asylum, withholding of removal is mandatory, not discretionary. 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a

8

particular social group, or political opinion."). As a result, so long as Christian persecution in Iraq persists, Karim seemingly will not be removed to that country. 8 C.F.R. § 1208.24(b)(1) (permitting termination of withholding of removal only when, in relevant part, the noncitizen "no longer would be threatened . . . in the country from which deportation or removal was withheld"). And should any removal effort to Iraq take place, Karim would have the opportunity to reassert his claim for asylum (or any other form of relief). *Id.* § 1208.24(f) (instructing that an immigration judge must "reopen a case" to terminate withholding of removal). Karim is thus presently safe from persecution in Iraq even absent a grant of asylum.